

Jennifer W. Sprengel | JSprengel@caffertyclobes.com | (312) 782-4880

November 19, 2021

**Via ECF**

Magistrate Judge Hildy Bowbeer
United States District Court
Warren E. Burger Federal Bldg. and U.S. Courthouse
316 North Robert Street
St. Paul, MN 55101

    RE: *In re Cattle and Beef Antitrust Litigation*, Lead Case No. 20-cv-1319-JRT-HB

Dear Magistrate Judge Bowbeer:

  On behalf of all Plaintiffs in the *In re Cattle and Beef Antitrust Litigation* cases, we set forth below Plaintiffs' positions on the disputed issues identified in the parties' joint 26(f) report.

**I.**   **Overview of Plaintiffs' Proposed Schedule**

  While the gaps between the parties' positions may seem narrow, Plaintiffs' schedule is carefully staged to provide the parties sufficient time to produce and review documents, data, and competing expert reports while using the entire discovery period to develop the record. *See* Proposed Schedules with Explanations attached hereto as **Exhibit A**. Thus, all of Plaintiffs' proposed dates are conditioned on each other so that the parties can meet the standard for class certification and their burden at trial.

  For example, the initial priority custodians and structured data deadline allows Plaintiffs and their experts approximately **ten (10) months** to complete a thorough review of the structured data and priority custodian documents, as well as obtain any necessary further discovery, prior to the date their motion for class certification and accompanying expert reports are due as fact discovery will not have closed yet. Defendants' proposal would give Plaintiffs merely **four (4) months** to work with the structured data before Plaintiffs' class certification reports are due. Experience makes clear this is entirely unworkable for Plaintiffs' experts to standardize, ask follow-up questions, and run their analysis on the finalized data. "Splitting the difference" between the parties' positions to

seven (7) months, given the tightness of the Plaintiffs' proposed schedule, is also not a feasible solution here.

With respect to spacing of briefing during class certification, Plaintiffs' class certification, expert, and *Daubert* briefing dates proceed lockstep to allow both Plaintiffs and their experts as well as Defendants and their experts sufficient time to draft and reply to certification motions, expert reports, and *Daubert* motions. In practice, Plaintiffs' class certification briefing schedule has worked very well in similar complex class action cases. Plaintiffs' proposed schedule contemplates class certification motions filed within 14 months, which is, frankly, already a remarkably aggressive schedule for four different classes. Additionally, the dispositive motion deadlines Plaintiffs propose allow for the case to progress rather than having it delayed while future appeal(s), if any, are pending.

## II. Disputed Issues Nos. 2, 3, 4, 5: Document Production and Related Procedures

### A. *Production of Priority Custodian Documents*

Plaintiffs' factual development of the case is advanced to the point that Plaintiffs can identify five (5) priority custodians at each Defendant Family that will most likely have relevant documents. Plaintiffs propose an interim deadline for the parties to substantially complete the production of documents for these five priority custodians per party by **April 1, 2022**. The use of priority custodians is efficient, as it allows discovery to proceed in an orderly fashion without a significant, months-long delay, while the parties complete their entire document productions. By expediting the production of documents for a modest number of priority custodians, the parties will have the confidence of a near-complete production of documents from those custodians to enable them to plan for third party discovery and plan for depositions on an accelerated basis.

Defendants oppose this proposal, contending, "Defendants don't believe the imposition of priority custodians is appropriate under the circumstances." Specifically, Defendants stated during meet-and-confers that it is not feasible to prioritize the production of certain high-priority custodians' documents when a party uses technology-assisted review ("TAR"). For any Defendant that uses search terms, there is no such barrier to prioritizing production of certain custodians. And the use of TAR, if Defendants so choose, does not make priority custodians infeasible. Their argument is belied by the fact that in the *Broilers* and *Pork* cases many of these same Defendants (and same law firms) used TAR and produced priority custodian documents earlier in the document production period. *In re Pork Antitrust Litig.*, No. 0:18-cv-01776, ECF No. 615 at 2 (D. Minn. Dec. 23, 2020) (reflecting the parties' agreement on designating and expediting the production of documents for priority custodians); *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, ECF No. 574 at 2 (N.D. Ill. Dec. 15, 2017) (ordering deadlines specific to priority

2

custodians).[1] The Court has broad discretion to implement a similar process here and should do so for the reasons described above. *See, e.g.*, Manual for Complex Litig., Fourth, § 11.211 (2004) (noting the appropriateness of "specific scheduling and deadlines" and "instituting any other special procedures to facilitate management of the litigation" in complex cases).

In addition to the fact that they "may" use TAR, Defendants' only other response is to point to *In re Turkey Antitrust Litig.*, No. 1:19-cv-08318 (N.D. Ill.), where they were permitted to produce documents whenever they chose in the document production period, and then notify Plaintiffs when they were finished with a particular custodian. It is notable (though unsurprising) that when this process was used, the vast majority of documents were produced in the last 60 days of the discovery period, with some defendants producing nearly all of their documents in the last 30 days of the discovery period. If the same thing happened here, this would prevent Plaintiffs from moving for class certification in February 2023, or from undertaking an early analysis of a few key custodians to allow them a head start at preparing for depositions and class certification. This approach should not be adopted here, and indeed, doing so would make Plaintiffs' (and Defendants') proposed schedules unworkable due to the inevitable back-loading of the key documents needed to plan for depositions and class certification.

### B.   *Fact Discovery Deadlines and Resolution of Privilege Log Procedures*

Plaintiffs propose that the deadline for the end of fact discovery and the resolution of privilege log issues occur by **June 1, 2023**. While the two-week difference between Plaintiffs' and Defendants' proposals (Defendants propose May 16) may appear small, Plaintiffs' schedule carefully balances the gaps between key events during fact discovery and class certification and *Daubert* briefing. Plaintiffs need the additional time because under their proposed schedule, class certification briefing will occur before the close of fact discovery, commencing on **February 9, 2023** and concluding in **mid-August 2023**. Double-tracking class certification procedures with the close of fact discovery and the resolution of privilege log issues will shorten the total time for pre-trial procedures but will necessitate the additional two weeks contemplated by Plaintiffs' proposed schedule.

Plaintiffs propose a schedule that permits the parties to move through discovery and into class certification on an expedited timeframe utilizing the entirety of the discovery period. However, the dates proposed by Plaintiffs are necessarily intertwined. In particular, three of these proposed dates are essential if class certification is to be filed by **February 2023**:

1. Defendants complete priority custodian productions by **April 1, 2022**;
2. Defendants complete structured data productions by **April 1, 2022**; and

---

[1] All unpublished orders are attached hereto as **Exhibit B**.

3

      3.     Document productions must be substantially complete by **June 1, 2022**.

The parties agree that interim dates should be set to facilitate the scheduling and taking of depositions but disagree as to the specific deadlines. Splitting the difference between the parties' positions, given the tightness of the schedule proposed, is also not a feasible solution here.

    **C.**    *Privilege Log Disputes*

Plaintiffs have sensibly proposed that privilege log disputes must be resolved *before* the close of fact discovery. A party successfully challenging another party's privilege log designations must be permitted a meaningful opportunity to use those de-designated documents in fact discovery. Permitting privilege log disputes to remain unresolved (as Defendants propose) also puts any Court-ordered schedule at risk because if privilege designations are resolved after the close of discovery, depositions may need to be re-opened, expert reports supplemented, and additional requests for production propounded. Moreover, there is no incentive for parties to resolve such issues if they can be cloaked during fact discovery. Ensuring that privilege log issues are resolved before fact discovery closes would, on the other hand, permit a receiving party to make use of the discovery material to which they are entitled under the law.

    **D.**    *Structured Data*

At class certification, Plaintiffs' experts will be required to present models to demonstrate that the elements of Rule 23 have been satisfied. To meet this standard, Plaintiffs' experts must assemble a model using structured data from Defendants relating to millions of purchases and sales during the alleged conspiracy period. This data is critical to the experts' ability to reach opinions and conclusions relevant to class certification and, ultimately, the merits.

It is not enough to merely receive Defendants' structured data; Plaintiffs need time after receipt of Defendants' data to make sure it is useable and comprehensible. It is customary that upon receipt of Defendants' structured data, Plaintiffs resolve questions about the fields produced; must check the productions for gaps, missing data, errors, or other inconsistencies; and merge the data productions into a unified data extract. This process can take months in relatively straightforward cases, and Plaintiffs assert that 10 months is the minimum amount of time to receive such data before class certification briefs are filed. If structured data is produced by **April 1, 2022**, it permits the parties 10 months to utilize the data for class certification on **February 9, 2023**.[2]

---

[2] Defendants were served with the majority of Plaintiffs' requests for structured data on June 19, 2020 and October 15, 2021. More than six months is adequate time for the

Defendants have proposed that structured data be produced by **July 1, 2022**, and class certification be filed four months later in **November 2022**. This is wholly inadequate, given the volume of data involved. In fact, Defendants know this is an inadequate amount of time. They are represented by sophisticated antitrust attorneys, who have been in other, large antitrust cases with far longer sequencing between production of structured data and expert reports. In *In re Pork Antitrust Litig.*, No. 0:18-cv-01776 (D. Minn.), for instance, receipt of structured data five months prior to Plaintiffs' class certification motion proved unworkable. Plaintiffs seek to avoid the same issues here.

E.  *Documents*

Plaintiffs must receive Defendants' documents with ample time so they can be assessed and considered by the experts in compiling their models and reports. Plaintiffs have proposed a two-stage approach so that documents from priority custodians will be produced by **April 1, 2022**, and the remaining production will be substantially completed by **June 1, 2022**, with class certification briefs due on **February 9, 2023**. This schedule is already lean, as documents will obviously be produced after this date since "substantially complete" does not mean "complete." Thus, Plaintiffs' proposal gives the parties eight months to prepare the record for opening class certification briefs.

Despite having the majority of Plaintiffs' documents requests for months, Defendants propose that substantial completion take place by **August 1, 2022**, which would require Plaintiffs to review such documents, use them at relevant depositions, and then file opening class certification briefs just three (3) months later in **November 2022**.

III.  **Disputed Issue No. 7: Interrogatories**

Plaintiffs propose that each Plaintiff group/class have ten (10) interrogatories in addition to the 25 that they may serve jointly. While there are a core set of facts that make joint interrogatories sensible, there are several unique aspects of the claims of the different Plaintiff groups/classes, *i.e.*, claims under the Commodities Exchange Act, claims from different participants in the market, and claims under different statutes that Plaintiffs are entitled to pursue individually. Moreover, the cases implicate different employees of the Defendants. For example, while Cattle Plaintiffs may wish to serve interrogatories relating to the Defendants' field buyers – the individuals who interact on the ground with cattle producers – the Beef Plaintiffs may prefer to focus further interrogatories on the actions of Defendants' beef salespersons.

---

production of data that most likely resides in electronic databases. Some supplemental requests are likely forthcoming in the coming month.

Moreover, the Direct Purchaser Plaintiffs' class filed a separate action from the Direct Action Plaintiffs, and their individual interrogatories should not be combined. DPPs and the Direct Action Plaintiffs will likely have separate case specific issues that will require discovery and thus neither should not be curtailed from propounding individual interrogatories. Ten individual interrogatories is a modest number to account for these differences.

### IV.     Disputed Issue No. 8: Requests for Admissions

With respect to requests for admission <u>not</u> pertaining to the evidentiary issues addressed in the prior paragraph, Plaintiffs propose that each Plaintiff Class/Family may serve 50 requests for admission on each Defendant Family, and Defendants may jointly serve 50 requests for admission on each named Plaintiff and Plaintiff Family in the class-action cases, and on each direct action Plaintiff Family.

The Federal Rules of Civil Procedure do not limit the number of requests for admission. This is because "Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." *See* Fed. R. Civ. P. 26 Advisory Committee's Notes 1970. Plaintiffs have unique issues for trial that requests for admission could be used to narrow and believe that reserving 50 for such purposes is reasonable. Defendants tacitly agree, as they themselves want to be able to serve 50 on each named Plaintiff, as well as each Direct Action Plaintiff. Limiting all Plaintiffs in the case to just 50 requests for admission is not reasonable.

### V.     Disputed Issue No. 9: Fact Depositions

Plaintiffs propose that the parties submit a comprehensive Deposition Protocol (attached hereto as **Exhibit C** is Plaintiffs' proposed Deposition Protocol sent to Defendants on November 5, 2021) to the Court that will address all matters pertaining to depositions by **February 1, 2022**. This will allow the parties sufficient time to complete their pending document-custodian negotiations, and thereby ensure that the parties' positions concerning the number, duration, and scheduling of depositions are meaningfully informed by the number of fact witnesses at issue. It is Plaintiffs' hope that by following this sequence of negotiations, the parties can narrow and crystallize any areas of dispute regarding depositions prior to seeking judicial resolution. Moreover, there is no risk that this sequence will delay the progress of this action, as both parties agree that depositions will not commence until sometime in mid-2022.

It is Plaintiffs' position that it is premature to submit any issues relating to the Deposition Protocol, including the number or hours of depositions allowed, to the Court for resolution. Nevertheless, should the Court wish to consider such issues, Plaintiffs

respectfully submit that the proposals set forth in Plaintiffs' draft Deposition Protocol, provided to Defendants on November 5, 2021, are reasonable and proportionate. Specifically, Plaintiffs' proposal to set a total cap of 240 hours for all 30(b)(1) and 30(b)(6) depositions per Defendant family is consistent with orders issued by this and other Courts presiding over complex cases such as this. *See, e.g.*, *In re Target Corporation Customer Data Security Breach Litigation*, No. 14-md-02522, ECF No. 227 (D. Minn. Oct. 28, 2014) (allowing "a maximum of 300 hours of deposition testimony, including Rule 30(b)(6) depositions" as to a single Defendant family); *Klein, et al. v. Facebook, Inc.*, No. 5:20-cv-08570, ECF No. 155 at 2 (N.D. Cal. Sept. 20, 2021) (adopting "plaintiffs' proposal of 200 total hours as the presumptive cap for Rule 30(b)(1) and Rule 30(b)(6) deposition testimony" of the defendant's current employees in antitrust case with two plaintiff groups and one defendant); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 1:14-md-02542, ECF No. 435 at 44:1–2 (S.D.N.Y. May 17, 2018) (authorizing "500 hours per side for party depositions" in antitrust case with multiple plaintiff groups).

Capping depositions by reference to the total number of hours, rather than the number of depositions, is particularly appropriate in this case, where there are multiple plaintiff groups, allegations that Defendants restrained trade with respect to both inputs and outputs, and significant variation across Defendants in size and scope. However, even if the Court were inclined to set limits based on the total number of depositions, Defendants' proposal of ten depositions per Defendant family would be unjustifiably low given the complexity of this case. *See, e.g.*, *United States v. Google LLC*, No. 1:20-cv-03010, ECF No. 108 at 2, 108-1 at 11 (D.D.C. Feb. 3, 2021) (permitting plaintiffs to take "80 depositions of fact witnesses" in antitrust case with multiple plaintiff groups and one defendant); *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, ECF No. 2024 at 1 (N.D. Ill. Apr. 10, 2019) (citing *In re Broiler*, No. 1:16-cv-08637, ECF No. 1914 at 2 (N.D. Ill. Feb. 22, 2019)) (granting plaintiffs' request for 21 depositions of the largest defendant family and 20 depositions of the second largest defendant family); *In re Broiler*, No. 1:16-cv-08637, ECF No. 1155 at 2 (N.D. Ill. Aug. 28, 2018) (permitting plaintiffs to take 10 depositions from each of the 18 defendant families, which was expanded to 21 and 20 depositions, respectively, for the two largest defendant families); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-02670, ECF No. 495 at ¶ 4 (S.D. Cal. Sept. 26, 2017) (stipulation granted at ECF No. 496 (Sept. 26, 2017)) (permitting plaintiffs to take 20 depositions for each of the three defendant families); *United States v. Anthem, Inc.*, No. 1:16-cv-01493, ECF No. 74 at 11 (D.D.C. Aug. 15, 2016) (authorizing, in antitrust case, "no limit on deposition of party witnesses."); *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420 ECF No. 905 at ¶ I(D) (N.D. Cal. Oct. 19, 2015) (permitting plaintiffs to take 120 depositions with no more than 12 depositions per defendant family, but excluding from limit any expert, Rule 30(b)(6), third party, or evidentiary depositions); *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143, ECF No. 606 at ¶ (e) (N.D. Cal. July 17, 2012) (permitting plaintiffs to take 15 depositions from each of the 12 defendant families).

## VI. Disputed Issue No. 10: Third-Party Depositions

Provisions dealing with third-party depositions are addressed in Plaintiffs' proposed Deposition Protocol. Plaintiffs believe that it is premature to set any cap on the maximum number of fact depositions of third-parties at this stage of the litigation. Plaintiffs will meet and confer with Defendants regarding a cap on the maximum number of fact depositions of third-parties once discovery has progressed and they better understand the number of relevant third parties.

## VII. Disputed Issue No. 11: Case Management Conferences

Plaintiffs propose that regularly scheduled case management conferences every 45 days will enhance the efficient resolution of disputes among the parties. Plaintiffs propose the parties submit an agenda five (5) calendar days in advance. If there are no issues to be addressed, the parties will so advise the Court. This would allow both the Court and the parties to set aside time in advance should disputes arise that require court intervention. Setting a default interval (and specific dates) early-on avoids constant scrambles later on to find dates that work for the Court and the parties.

## VIII. Disputed Issues Nos. 12, 15, 16: Trial Expert Discovery, Dispositive Motion Deadlines, and Trial Ready Date

Plaintiffs have proposed dates for the completion of merits expert discovery and for other post-class certification deadlines including summary judgement briefing and trial. Plaintiffs think that scheduling these dates guarantees timely progress of the case. Waiting until after a class certification order becomes "final," which could be more than a year due to appeals, means the litigation will grind to a halt, even though merits and summary judgment briefing could move ahead even while the appeal is pending.

## IX. Disputed Issues Nos. 13, 14: Non-Dispositive Motion Deadlines

Deadlines for amending the pleadings, adding parties, and for non-dispositive motions, should be keyed off of the substantial completion or close of discovery. Part of the very purpose of discovery is to uncover information that would bear on amending the pleadings, identifying parties, and providing the basis for non-dispositive motions. There is little sense (or fairness) in establishing an earlier deadline to amend when the discovery record continues to develop in ways that could inform these events. *See In re Broiler Chicken Antitrust Litig.*, No. 16-cv-08637, ECF No. 388 at 3 (N.D. Ill. 2017) (deadline for amending complaints set for 120 days after deadline for substantial completion of document productions).

## X.  Class Certification Motion Practice and Related Expert Discovery

The parties have submitted competing schedules for class certification briefing, the submission of class certification expert reports, and *Daubert* motions with respect to those reports. Plaintiffs propose that *Daubert* motions and the related briefing occur in conjunction with the class certification briefing and the submission of the class certification expert reports. Defendants, in essence, propose a separate proceeding for them alone that begins after the submission of Plaintiffs' reply briefs and rebuttal reports.

Plaintiffs' proposed class certification-related deadlines follow an equitable rhythm, with one deadline following logically from the prior deadline. For example, the deadline for Defendants to depose Plaintiffs' class certification experts follows the disclosure of Plaintiffs' class certification experts' reports. Similarly, Defendants' deadline to file *Daubert* motions follows their deadline to depose Plaintiffs' class certification experts, occurs on the same day as the deadline for Defendants to disclose their expert reports, and takes place before Plaintiffs' deadline to depose Defendants' class certification experts. Under Defendants' proposed schedule, however, Defendants do not have to file their *Daubert* motions until after Defendants disclose their class certification experts, after Plaintiffs depose Defendants' class certification experts, after Plaintiffs disclose their rebuttal expert reports, and after fact discovery closes. The inequity of Defendants' proposal is made clear by the amount of time the parties have between the disclosure of the opposing side's expert reports and the deadline to file *Daubert* motions. Plaintiffs have only two months after Defendants disclose their class certification expert reports to depose those experts and file *Daubert* motions. Yet, Defendants have more than six months after Plaintiffs disclose their class certification expert reports to file *Daubert* motions. Defendants also contemplate taking two depositions of Plaintiffs' experts: once after their expert reports are filed and again after rebuttal reports. This is unnecessary and unfair since no new facts will be presented in any rebuttal reports or a reply brief and Defendants are not entitled to a sur-reply. This cadence provides Defendants with an unfair and prejudicial advantage. Not only would Defendants and their experts have additional time to study and dissect Plaintiffs' class certification experts' reports and deposition testimony, but they would also have the benefit of additional fact discovery before filing their *Daubert* motions. The schedule must not provide Defendants with such an advantage.

The procedure proposed by Defendants unnecessarily delays class certification, adding several months to the process. Defendants' apparent concern that Plaintiffs may add new material on rebuttal that the Defendants have no opportunity to respond to can be handled within the existing rules framework.

Dated:  November 19, 2021                    Respectfully submitted,

/s/ *Jennifer W. Sprengel*
Jennifer W. Sprengel (*pro hac vice*)
Anthony F. Fata (*pro hac vice*)
Kaitlin Naughton (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, IL 60603
Tel.: 312-782-4882
Fax: 312-782-4485
jsprengel@caffertyclobes.com
afata@caffertyclobes.com
knaughton@caffertyclobes.com

Ellen Meriwether (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
205 N. Monroe Street
Media, PA 19063
Tel.: 215-864-2800
Fax: 215-864-2810
emeriwether@caffertyclobes.com

Christopher M. Burke (*pro hac vice*)
**SCOTT + SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
Fax: 619-233-0508
cburke@scott-scott.com

David R. Scott (*pro hac vice*)
Amanda F. Lawrence (*pro hac vice*)
Patrick J. McGahan (*pro hac vice*)
Michael P. Srodoski (Bar No. 0398250)
**SCOTT + SCOTT ATTORNEYS AT LAW LLP**
156 Main Street
P.O. Box 192
Colchester, CT 06415

Tel.: 860-537-5537
Fax.: 860-537-4432
david.scott@scot-scott.com
alawrence@scott-scott.com
pmcgahan@scott-scott.com
msrodoski@scott-scott.com

Joseph P. Guglielmo (*pro hac vice*)
**SCOTT + SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue
17th Floor
New York, NY 10169
Tel.: 212-223-6444
Fax: 212-223-6334
jguglielmo@scott-scott.com

*Interim Co-Lead Counsel for the Cattle Plaintiffs*

K. Craig Wildfang (Bar No. 0117043)
Thomas J. Undlin (Bar No. 0183751)
Stacey P. Slaughter (Bar No. 0296971)
Geoffrey H. Kozen (Bar No. 0398626)
Eric P. Barstad (Bar No. 398979)
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Tel.: 612-349-8500
Fax: 612-339-4181
kcwildfang@robinskaplan.com
tundlin@robinskaplan.com
sslaughter@robinskaplan.com
gkozen@robinskaplan.com
ebarstad@robinskaplan.com

Kellie Lerner
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022

Tel.: 212-980-7400
Fax: 212-980-7499
klerner@robinskaplan.com

***Liaison Counsel for the Cattle Plaintiffs***

Shana E. Scarlett (*pro hac vice*)
Rio S. Pierce (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Tel.: (510) 725-3000
Fax: (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.com

Steve W. Berman (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com

W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Arielle S. Wagner (MN #0398332)
Stephanie A. Chen (MN #0400032)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55402
Tel.: (612) 339-6900
Fax: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
aswagner@locklaw.com
sachen@locklaw.com

J. Barton Goplerud
**SHINDLER, ANDERSON, GOPLERUD & WEESE, PC**
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Tel: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagslaw.com

*Counsel for Plaintiffs and the Proposed Consumer Indirect Purchaser Classes in the Peterson Action*

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#259337)
Michelle J. Looby (#0388166)
Joshua J. Rissman (#0391500)
Brittany Resch (#397656)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Dennis J. Stewart (*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
600 B Street, 17th Floor
San Diego, CA 92101
Tel: (612) 333-8844
Fax: (612) 339-6622
dstewart@gustafsongluek.com

Adam J. Zapala (*pro hac vice*)
Elizabeth T. Castillo (*pro hac vice*)
Reid W. Gaa (*pro hac vice*)
**COTCHETT, PITRE & MCCARTHY, LLP**

840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
azapala@cpmlegal.com
ecastillo@cpmlegal.com
rgaa@cpmlegal.com

Alexander E. Barnett (*pro hac vice*)
**COTCHETT, PITRE & MCCARTHY, LLP**
40 Worth Street, 10th Floor
New York, NY 10013
Tel: (212) 201-6820
Fax: (917-398-7753
abarnett@cpmlegal.com

Jason S. Hartley (*pro hac vice*)
**HARTLEY LLP**
101 W. Broadway, Suite 820
San Diego, CA 92101
Tel: (619) 400-5822
hartley@hartleyllp.com

Megan E. Jones (*pro hac vice*)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908

*Interim Co-Lead Counsel for the Proposed Direct Purchaser Plaintiffs*

Shawn M. Raiter (MN #240424)
**LARSON KING LLP**
30 East Seventh Street, Suite 2800
St. Paul, MN 55101
Tel: (651) 312-6518
sraiter@larsonking.com

Don Barrett (*pro hac vice*)
David McMullan (*pro hac vice*)
**BARRETT LAW GROUP, P.A.**

P.O. Box 927
404 Court Square North
Lexington, Mississippi 39095-0927
Tel: (662) 834-9168
Fax: (662) 834-2628
donbarrettpa@gmail.com
mcmullan@BarrettLawGroup.com

Jonathon W. Cuneo (*pro hac vice*)
Blaine Finley (*pro hac vice*)
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202) 789-3960
jonc@cuneolaw.com
bfinley@cuneolaw.com

Jon Tostrud
Anthony Carter (to apply *pro hac vice*)
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
jtostrud@tostrudlaw.com
acarter@tostrudlaw.com

*Counsel for Erbert & Gerbert's, Inc. and the Proposed Classes*

Patrick J. Ahern
Theodore B. Bell
**AHERN AND ASSOCIATES, P.C.**
Willoughby Tower
8 South Michigan Avenue, Suite 3600
Chicago, Illinois 60603
Ph: (312) 404-3760
patrick.ahern@ahernandassociatespc.com
theo.bell@ahernandassociatespc.com

Patrick J. Lee-O'Halloran (#269074)
**THOMPSON TARASEK LEE-O'HALLORAN PLLC**
7101 York Avenue South, Suite 255
Edina, MN 55435

15

        Telephone: (612) 568-0132
        Fax: (612) 564-6976
        patrick@ttlolaw.com

        ***Attorneys for Plaintiffs Winn-Dixie***
        ***Stores, Inc., and Bi-Lo Holding, LLC***