# MAYER | BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
United States of America

T: +1 312 782 0600
F: +1 312 701 7711

mayerbrown.com

**Britt M. Miller**
T: +1 312 701 8663
F: +1 312 701 7111
bmiller@mayerbrown.com

November 19, 2021

**VIA ECF**

Magistrate Judge Hildy Bowbeer
United States District Court for the District of Minnesota
Warren E. Burger Federal Bldg. and U.S. Courthouse
316 North Robert Street, Suite 632
St. Paul, MN 55101

Re: *In re Cattle and Beef Antitrust Litigation*,
Case No. 20-cv-1319 (All Cases)

Magistrate Judge Bowbeer:

Defendants submit the following concise explanations for their positions regarding the disputed provisions in the parties' Rule 26(f) report. Plaintiffs are submitting their positions separately.[1]

As the Court will see, Defendants are not seeking anything radical in their proposed schedule; the exact opposite is true. Each of the disputed issues comes down whether this case is going to be handled efficiently and fairly—with coordinated production dates, streamlined document review, ordered fact and expert discovery, reasonable limits on interrogatories, non-evidentiary requests for admission, and depositions, appropriate foreign discovery (if any), and an orderly, and balanced case schedule—or whether Plaintiffs' proposed staggered approach—which imposes massive discovery burdens on Defendants, leaves critical schedule-impacting questions regarding the number of party and non-party depositions unresolved, and imposes a one-sided (Plaintiff-friendly) schedule that eschews the realities of large, complex litigation—will prevail.

Defendants look forward to discussing these issues further at the December 6 case management conference.

---

[1] Once it became clear from Plaintiffs' November 17 counterproposal (in which they made no meaningful compromises) that the parties would be making these submissions, Defendants suggested that the parties seek the Court's guidance on what presentation of written argument on their positions, if any, would be helpful to the Court. Defendants also objected to Plaintiffs' attempt to append their draft "deposition protocol" to the report, as the parties agree that protocol is—with one exception—not a document the Court needs to consider at this time. Plaintiffs rejected both suggestions, instead declaring that they would submit a 4,000-word argument statement and attach the yet-to-be-discussed deposition protocol. Defendants accordingly submit this corresponding statement.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Magistrate Judge Hildy Bowbeer
November 19, 2021
Page 2

**Disputed Insert 1 – Start of Rolling Productions**

This provision establishes a date certain by which the parties should start their respective document productions. The parties agree that the meet-and-confer process about the scope of the discovery requested under the first set of discovery requests must be completed before the clock can start. The dispute surrounds what will trigger this deadline: the completion of *all* of the meet-and-confers among the parties, or the completion of the meet-and-confer process with *any one of the five* separate plaintiff groups.

Plaintiffs' proposal would unnecessarily complicate an already complicated discovery process and significantly increase the burden on Defendants. These antitrust actions have already been consolidated and coordinated for discovery purposes, and this Court ordered that the parties "shall, respectively, work together to coordinate discovery, where appropriate and practicable, in a manner that reduces needless duplication and inefficiency, keeping in mind the goal of Federal Rule of Civil Procedure 1 to promote the just, speedy, and inexpensive resolution of these cases." ECF No. 252. Allowing the parties to globally resolve all of the disputes regarding the acceptable scope of discovery before launching their efforts to review and produce documents supports an efficient discovery process. Further, no prejudice results from adopting Defendants' proposed timing. The parties current meet-and-confer process must be completed no later than January 10, 2022. Triggering rolling productions based on meet-and-confer completions that likely will only be days, at most a few weeks, apart, is counterproductive and should be rejected.

**Disputed Insert 2 – Priority Custodians**

With their proposed language in Disputed Insert 2, Plaintiffs attempt to impose an unusual and unwarranted burden on Defendants: the obligation to split out "priority custodians" and process all of those custodians' materials for review and production first, with a separate production deadline (April 1, 2022) that comes *thirteen* months before Plaintiffs' proposed end of fact discovery (June 1, 2023). *See* Rule 26(f) Report, Ex. A. That forced incursion of substantial additional burden and expense by Defendants is unwarranted. Once the parties agree on the scope of discovery and objections to the same, Plaintiffs have no ability to dictate Defendants' review protocols. *Accord, e.g.*, *Criss v. County of Dakota, Neb.*, 2010 WL 4628175, at *4 (D. Neb. Nov. 8, 2010) (finding that "parties are free to tailor discovery requests to minimize redundancies and maximize efficiencies"); *see also* SEDONA CONFERENCE PRINCIPLE 6 ("responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information"). Moreover, Plaintiffs' request would significantly impair Defendants' ability to structure their discovery efforts across five cases and hundreds of discovery requests in an efficient manner.

In their latest custodian proposal, Plaintiffs propose hundreds of custodians and custodial sources, with nearly every Defendant producing documents for over 70 custodians. Yet Plaintiffs demand that Defendants carve out the documents from 5 "priority custodians" to process first. ESI procedures work best when you can work with a cohesive set of documents. First, there is significant value to threading and de-duplication technology to limit the number of documents that

Magistrate Judge Hildy Bowbeer
November 19, 2021
Page 3

need to be reviewed and ultimately produced. As custodial data is collected and processed, more and more documents are identified as lesser included emails or duplicates, continually reducing the overall volume. That efficiency is lost if a party has already produced the lesser included document. Second, Plaintiffs' proposal would limit the Defendants' ability to leverage the latest technology assisted review models to help with efficient review if they elect to do so. Such models work best when deployed over an entire, cohesive set of documents which then allow the model to learn and score documents appropriately. Prioritizing certain documents will compromise the model's efficiency and reliability, and Defendants would potentially then incur the costs of two such processes to review first the five priority custodians, followed by the remainder. A party's ability to consistently identify and log privileged documents also is greatly enhanced by being able to process documents together.

To be clear, Defendants do not contend it is technologically impossible to produce documents from a set of priority custodians. But doing so unnecessarily increases the burden and expense on them, in a discovery process that already promises to be extensive, complicated and burdensome.

**Disputed Inserts 3-5 and Exhibit A - Scheduling Proposals – Fact Discovery**

Defendants' proposed schedule largely tracks Plaintiffs' proposal, with the proposed close of fact discovery only two weeks apart. (Exhibit A.)

In fact, that the parties' proposed schedules are so close reflects major concessions by Defendants, which were not reciprocated. Defendants proposed an entirely different schedule—close of fact discovery, followed by expert discovery, followed by class certification motions—a structure that has been adopted in a number of other antitrust cases. *See, e.g.*, *Olean Wholesale Grocery Cooperative, Inc.*, et al., v. *Agri Stats, Inc.*, Case No. 19-cv-08318, ECF No. 123 (N.D. Ill. Jan. 11, 2021). In the interest of compromise, however, Defendants accepted Plaintiffs' proposed structure, leaving fact discovery open until well after class certification briefing has begun and intermixing class certification expert discovery and class certification briefing. Defendants therefore proposed that fact discovery be commenced in time to be completed on or before May 16, 2023, two weeks before Plaintiffs' proposed date.

In the more near-term, Defendants proposed reasonable deadlines for completing structured data productions (July 1, 2022) and substantially completing document productions (August 1, 2022). These proposals allow the parties two more months than Plaintiffs' proposal to complete these major production deadlines. As the production burden will predominantly fall on Defendants, we respectfully submit that Defendants' request for slightly more time should be granted. In fact, with the parties currently set to be negotiating custodians, non-custodial sources, date ranges, search terms, and a search methodology order into February 2022—with disputes on these topics to be submitted in mid-February 2022 (*see* ECF No. 271, at 8-9)—Plaintiffs' proposal that the parties complete productions of documents in April and June 2022 is unrealistic and contrary to the Federal Rules. *See* Fed. R. Civ. P. 1 (providing for "the just, speedy, and *inexpensive* determination of every action and proceeding" (emphasis added)).

Magistrate Judge Hildy Bowbeer
November 19, 2021
Page 4

**Disputed Insert 6 – Foreign Discovery**

Plaintiffs' claims that there will be "significant discovery relating to Defendant JBS S.A." and that discovery "will likely prove necessary" with respect to National Beef's parent company Marfrig Global Foods S.A." are incorrect. Plaintiffs have not raised any specific allegations with respect to either of these Brazilian companies. And for several reasons, Plaintiffs' attempt to invoke the specter of foreign discovery on Marfrig is particularly misplaced. Plaintiffs have not named Marfrig as a Defendant in any of the cases. Marfrig only acquired majority ownership of National Beef in June 2018, several years into any alleged "conspiracy." And National Beef (or any party to these matters) lacks the ability or authority either to produce documents from Marfrig or to bind Marfrig to any "protocol" proposed by Plaintiffs.

As Plaintiffs note, they have not yet even attempted to confer with Defendants on any of these issues. In fact, Plaintiffs proposed that the parties defer conferring on foreign discovery issues until after submitting this Rule 26(f) report. Defendants agreed to Plaintiffs' proposal, so any discussion of foreign discovery issues in this document is premature under Plaintiffs' proposed approach. In particular, it is entirely premature for the Court to adopt Plaintiffs' proposal that a "foreign discovery protocol" must be agreed to by January 14, 2022. Plaintiffs have not pointed to any authority requiring such a protocol. Nor have they established or even explained why one would be appropriate here. The Court's Rule 26(f) Report template only requires that the parties discuss various issues relating to timing and impediments to any foreign discovery and discuss plans or proposal to address those issues. Defendants will do that, but the Court should not require anything more than that at this time.

**Disputed Insert 7 - Interrogatories**

The Federal Rules place presumptive limits on the number of Interrogatories because they can impose significant costs and burdens. *See* Fed. R. Civ. P. 33 advisory committee's note to 1993 amendment. Generally, a party seeking to serve more than 25 Interrogatories must make a particularized showing of why the discovery is necessary. *Archer Daniels Midland Co. v. Aon Risk Servs. of Minn.*, 187 F.R.D. 578, 586 (D. Minn. 1999).

Defendants' proposal adjusts those presumptive limits for these circumstances in a way that dovetails with what was done in the *Pork* litigation and properly recognizes the significant overlap among the claims of the various cases. Plaintiffs' proposal, in contrast, seeks to unreasonably expand the number of Interrogatories, requiring each Defendant family to answer 75 interrogatories.

Under Defendants' proposal, Defendants are limited to *joint* Interrogatories to Plaintiffs, with *no separate* Interrogatories by any Defendant to Plaintiffs. Under that proposal, Defendants are limited to jointly serving **20** interrogatories on each of the individual named Plaintiffs and **30** interrogatories on the corporate named Plaintiffs and the Weinreis Family (three related Plaintiffs). No Plaintiff (including the Weinreis Family group collectively) will have to answer more than **30** Interrogatories total.

Magistrate Judge Hildy Bowbeer
November 19, 2021
Page 5

Defendants' proposal also reasonably calibrates the number of Interrogatories from Plaintiffs in a way that recognizes there are significant common issues here that should be handled through joint Interrogatories. Under Defendants' proposal, Plaintiffs can *jointly* serve **30** Interrogatories on each Defendant family, and each Plaintiff Class separately may serve an additional **5** interrogatories.[2] Each Defendant family thus would answer **50** Interrogatories total: **30** joint Interrogatories and **20** Interrogatories total from the separate classes (5 from each of the 4 Plaintiff Classes). That is very similar to—and, in fact, provides for more liberal discovery than—the balance struck in the *Pork* case. *See Pork*, Case No. 18-cv-01776-JRT-HB, Doc. 569 at 5 (allowing Plaintiffs to jointly serve 25 interrogatories and each Plaintiff class to individually serve 5).

Plaintiffs' agree with Defendants as to Defendants' interrogatories to Plaintiffs, but Plaintiffs seek to dramatically expand the number of Interrogatories from Plaintiffs to Defendants. Under Plaintiffs' proposal, each Defendant family would answer **75** Interrogatories: **25** joint Plaintiff Interrogatories and **50** Interrogatories total from the separate classes: (a) 10 Interrogatories from each of the 4 Plaintiff Classes and (b) 10 Interrogatories from Direct Action Plaintiffs counting as a separate "Class." That proposal is excessive and unreasonable and should be rejected.

### Disputed Insert 8 – Non-Evidentiary Requests for Admission (RFAs)

Plaintiffs unreasonably propose that *each* "Plaintiff Class (with Direct Action Plaintiffs counting as one class)" may serve "50 requests for admission on each Defendant Family"—for a total of **250** non-evidentiary RFAs for each Defendant family. That request is excessive and unreasonable and fails to recognize the significant overlap among the claims by the various Classes.

Defendants' proposal, in contrast, recognizes the significant overlap among claims by providing that all Plaintiffs together can *jointly* serve **50** requests for admission, and "[e]ach Plaintiff Class together with any related Direct Action Plaintiffs (*e.g., In re DPP* Class Action Plaintiffs jointly with *Winn-Dixie* Plaintiffs) may separately serve an additional **5** requests for admission but must coordinate to ensure that any such requests do not cause unnecessary duplication" (emphasis added). Each Defendant family thus would respond to up to **70** requests for admission—**50** joint requests plus **5** each from the four classes and any related Direct Action plaintiffs. This is comparable to what was done in the *Pork* lawsuit, *see Pork*, Case No. 18-cv-01776-JRT-HB, Doc. 569 at 10 (providing for joint service of 75 requests for admission), and it strikes the proper balance recognizing the significant overlap among the common issues in this lawsuit while permitting separate requests by each Plaintiff Class and their related Direct Action Plaintiffs.

---

[2] Each Plaintiff Class would serve individual interrogatories together with any related Direct Action Plaintiffs (*e.g., In re DPP* Class Action Plaintiffs jointly with the *Winn-Dixie* Plaintiffs).

Magistrate Judge Hildy Bowbeer
November 19, 2021
Page 6

**Disputed Inserts 9 & 10 – Party and Non-Party Deposition Limits**

As is standard, Defendants propose that the scheduling order set limits on fact depositions. Plaintiffs, however, seek to defer *any* ruling on deposition limits until February 2022. But if *any* schedule is to be meaningful, it needs to include the *full* scope of discovery.

Defendants accordingly proposed reasonable limits on both party and non-party depositions. As to the parties, Defendants' proposal allows Plaintiffs up to **40** total Fed. R. Civ. Proc. 30(b)(1) depositions and **1** Rule 30(b)(6) deposition per Defendant family, and Defendants collectively deposing up to **5** Rule 30(b)(1) witnesses per corporate named Plaintiff and **1** deposition of each individual named Plaintiff, and one Rule 30(b)(6) for each corporate Plaintiff. Defendants' proposal also seeks to avoid any witness from being deposed twice and makes clear that Federal Rules limit of 7-hours apply to all depositions. As the Court will no doubt be aware, Defendants proposal closely tracks the limits the Court already approved in *Pork*, ECF No. 658, at 6-8. As to third parties, Defendants' proposal includes **40** depositions per side. Although Defendants recognize that discovery is in its infancy, the litigation has been pending for over two years and Plaintiffs should have some sense of the third parties they may want to depose. Indeed, Plaintiffs already have issued 30 document subpoenas to third parties. Yet Plaintiffs refuse to commit to any number of third-party depositions—even with a reservation of rights to seek additional ones upon a showing of good cause.

Indeed, Plaintiffs not only refused to set any deposition limits on third parties, but they refuse to set any *party* deposition limits as part of the Rule 16 process and are advocating that there be *no* firm limits on the number of Defendant depositions. Instead, they propose only a total hours cap of *240* hours "per Defendant for Rule 30(b)(1) and Rule 30(b)(6) depositions" that can be divided into as many depositions as Plaintiffs choose (up to eight hours)—a number that could grow even larger as Plaintiffs purport to reserve their "rights" to seek additional depositions and depose any trial witness not deposed during fact discovery (even if they were not deposed because Plaintiffs *choose* not to depose them in advance). The possible burden on Defendants is immense. Consider just the 240 hour limit: under Plaintiffs' approach they could take *80* 3-hour depositions of *each* Defendant (a total of 320 depositions) if they so choose. Regardless of the length of the deposition, the burden on Defendants to fully prepare each witness remains the same as Defendants will have to assume going into the deposition that it could be a full-blown 7-or-8 hour deposition (depending on the Court's ruling). This is neither just nor efficient and is a drastic deviation from what the Federal Rules contemplate. *See* Fed. R. Civ. P. 1.

The lack of certainty about the number of witnesses that Defendants will have to prepare, and the possibility that Defendants will have to schedule, prepare, and defend potentially hundreds of depositions, is plainly burdensome and inefficient. Moreover, leaving the question of the number of depositions "open" to some point later in the litigation (as Plaintiffs propose), virtually guarantees that any schedule the Court may set now is ephemeral and could radically change based on Plaintiffs as-yet-undisclosed deposition plan.

**Disputed Insert 11 – Court Conferences**

Defendants are not opposed to discovery status conferences, or even regularly scheduled ones, should they become necessary. But it is premature to set conferences every 45 days, especially given the upcoming holidays. Defendants suggest allowing the parties to get through many of the initial discovery deadlines for meeting and conferring over custodians, noncustodial sources, date ranges, previously served requests for production (*see* ECF No. 271 at 8) and then setting a status conference toward the end of January 2021. At that point, the parties will be more informed as whether regularly scheduled conferences would be helpful and can advise the Court accordingly.

**Disputed Inserts 12, 15 & 16 and Exhibit A - Scheduling Proposals for Class Certification, Trial Expert Discovery, Dispositive Motion Practice, and Trial Date**

As noted above, Defendants' proposed schedule largely tracks the structure of Plaintiffs' proposal, but with key differences related to class certification experts and briefing. (*See* Exhibit A.) Defendants' proposed schedule also reasonably defers setting a schedule on post-class-certification trial expert discovery, scheduling of non-dispositive motions relating to trial expert discovery, and post-class-certification dispositive motion deadlines.

Defendants already compromised and adopted Plaintiffs' preferred structure for class certification—with class-related expert discovery and briefing occurring largely simultaneously and fact discovery remaining open until after class briefing. Defendants' concession, however, was subject to several critical requests:

- Defendants have an opportunity to depose Plaintiffs' class certification rebuttal experts to question any issues/conclusions contained in that report, and

- Defendants not be required to file their *Daubert* motions of Plaintiffs' class certification experts before they complete discovery relating to those experts.

It is only fair that Defendants have the opportunity to explore Plaintiffs' expert rebuttal reports and incorporate what they learn into their class *Daubert* motions. Plaintiffs refuse to concede even these commonsense and fair requests.

Another significant departure between the parties' proposed schedules is that Plaintiffs seek an unreasonable amount to time to prepare their class certification motions. In Defendants' proposal, Plaintiffs will have more than three months between the substantial completion of the production of documents and filing their motions, and will have had four months with Defendants' structured data. There is no good reason that—after attempting to squeeze Defendants into a particularly tight discovery schedule—Plaintiffs should get eight months to move for class certification (as they propose). After all, motions for class certification are primarily *about plaintiffs*. *See* Fed. R. Civ. P. 23.

Magistrate Judge Hildy Bowbeer
November 19, 2021
Page 8

Last, Defendants propose that instead of setting placeholder dates for post class certification events the Court set a more realistic schedule for those aspects of the case after it decides whether to certify the classes and that decision has become final. After all, if Defendants defeat certification, what issues/cases actually go to trial may look markedly different. Courts regularly agree with this practical suggestion in complex cases like these. *See, e.g.*, *In re Pork Antitrust Litig.*, Case No. 18-cv-1776, ECF No. 658, pp. 16-17 (D. Minn. Jan. 26, 2021) (adopting nearly identical provisions to Defendants' proposal); *In re: CenturyLink Sales Practs. and Secs. Litig.*, MDL No. 17-2795, ECF No. 155, ¶ 13 (D. Minn. May 15, 2018) (deferring the scheduling of further expert discover, dispositive motions, and trial until after ruling on class certification). Any claim of prejudice is not well taken and delaying these dates makes even more sense here given that Plaintiffs have insisted that the cases only be coordinated for *pre*-trial proceedings. (ECF No. 252, ¶ 2 ("for pretrial purposes").) If Plaintiffs seek to have separate trials in these coordinated actions (which Defendants may oppose), they cannot reasonably expect that 5 different trials occur simultaneously.

### **Disputed Insert 13 – Motions to Amend the Pleadings**

The first complaint in these coordinated cases was filed more than two and a half years ago. Since then, each group of Plaintiffs have amended at least once, including *after* Chief Judge Tunheim initially granted Defendants' motions to dismiss and *after* this Court required Defendants to produce documents that they had produced to certain government agencies. (The Producer plaintiffs (*Cattle*) are on their third complaint, while the Indirect Purchaser plaintiffs (*Peterson*) are on their fourth complaint.) In these circumstances, it is neither unreasonable nor unfair to require Plaintiffs to commit to their theory of the case by June 2, 2022, as Defendants propose. Such a requirement would allow Defendant to proceed in discovery with confidence that they are seeking all the information they need about the claims actually at issue.

As this Court is well aware, amended complaints carry the potential to disrupt the efficient management of these cases, and that risk would greatly increase if Plaintiffs were permitted to amend their complaints four months *after* Defendants have substantially complete their document productions. The purpose of discovery is not to identify new claims or parties, but to obtain evidence of the claims pled. And in the event that Plaintiffs do uncover information that they believe warrant an untimely amendment, they are free to seek relief from the Court. *See* Fed. R. Civ. P. 16(b)(4).

For these reasons, scheduling orders in this district typically provide amendment toward the beginning of discovery, not after the completion of document production. *See, e.g.*, *In re Pork Antitrust Litig.*, Case No. 18-cv-1776, ECF No. 658, pp. 2, 4 (D. Minn. Jan. 26, 2021) (setting deadline for motions to amend pleadings of June 1, 2021 and completion of fact discovery on September 1, 2022); *Regional Multiple Listing Serv. of Minn. v. Am. Home Realty Network, Inc.*, No. 12-965-JRT/FLN, ECF No. 70 (scheduling order issued December 11, 2012 in antitrust case before J. Tunheim setting deadlines for motions to amend pleadings of April 1, 2013 (100 days after initial disclosure deadline) and completion of all fact discovery by September 1, 2013). Defendants here ask for the same.

Magistrate Judge Hildy Bowbeer
November 19, 2021
Page 9

**Disputed Insert 14 – Non-Dispositive Motions (Non-Experts)**

Defendants propose that the deadline for non-dispositive motions unrelated to trial experts fall two weeks after close of fact discovery. This is a standard suggestion in this District and allows the parties more comfort that should any last-minute discovery disputes arise closer to the deadline for fact discovery, they will be able to seek relief from the Court. Plaintiffs' proposal, by contrast (60 days *before* the close of fact discovery, absent a showing of good cause) also has the disadvantage of falling, under their proposed overall schedule, in April 2023, right when Plaintiffs propose that Defendants should be responding to Plaintiffs' class certification motion and disclosing Defendants' class certification experts. Defendants should be allowed to focus on those significant motions without having to also brief non-dispositive fact-discovery motions, particularly when fact discovery may continue to take place for two more months.

***

Defendants are happy to answer any questions the Court may have.

Sincerely,

*/s/ Britt M. Miller*

Britt M. Miller

*Counsel for the Cargill Defendants and for purposes of this filing on behalf of All Defendants*

cc:   All Counsel of Record