# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE CATTLE AND BEEF ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>All Actions | Case No. 0:20-cv-01319 (JRT/HB)<br><br>**ORDER REGARDING SEARCH METHODOLOGY FOR ELECTRONICALLY STORED INFORMATION** |

  This Order Regarding Search Methodology for Electronically Stored Information ("Search Methodology Order") shall govern the Parties in the above-captioned case whether they currently are involved or become so in the future, and any related actions that may later be consolidated or coordinated with this case (collectively, the "Litigation"). This Search Methodology Order is not intended to modify the obligations under the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Minnesota. This Search Methodology Order complements, and is not intended to contradict, the existing Order Regarding Production of Electronically Stored Information and Paper Documents ("ESI Protocol"), In re Cattle & Beef Antitrust Litigation, 19-cv-1319-JRT-HB, ECF No. 93. Capitalized terms are defined in the ESI Protocol.

  The Parties agree to work together in good faith to resolve any differences that they may have over the producing Party's search methodology and/or disclosures. If an agreement cannot be timely reached, then the Parties agree to raise this issue with the Court.

## I. DOCUMENT SOURCE DISCLOSURES

  **A.** **Transparency:** With the goal of permitting requesting Parties an appropriate level of transparency into a producing Party's electronic search process, and without requiring the disclosure of attorney work product or other privileged information, the Parties endeavor to be reasonably transparent regarding the universe of documents subject to targeted collections or culling via search terms and/or Technology Assisted Review ("TAR")[1].

---

[1] The term TAR is used herein generically to refer to any technology-assisted review process used to identify documents to be produced as part of the Parties' discovery process, and it may include TAR 2.0, continuous active learning ("CAL"), or other algorithms. If any party elects to use TAR 1.0 to cull its documents, it must promptly disclose its intent

B. **Pre-Search Deduplication & Culling of Collected Data:**

    A. **De-Duplication**: Before running either of the Search Processes below in Paragraph II, the parties will use their best efforts to ensure data is de-duplicated by hash value across all agreed or Court-ordered document custodians using the deduplication procedures provided for in Paragraph IV(E) of the Order Regarding Production of Electronically Stored Information and Paper Documents ("ESI Protocol") (ECF No. 93).

    B. **Email Threading**: If the producing Party's search software has the capability, then the producing Party may choose to only include inclusive emails in the data set subject to the Keyword and/or TAR Search Process, including the data set against which keyword searches are tested, provided, however, that an email that includes an attachment or content in the BCC or other blind copy field shall not be treated as a lesser-included version of an email that does not include the attachment or content, even if all remaining content in the email is identical, and provided that searches with the date limiters should only be run on unthreaded sets (if threading is reasonably feasible at the time of the search term identification process). A producing Party will disclose whether or not they are testing search terms in a set of data that excludes non-inclusive emails. See ESI Protocol, ¶ IV(D)(1).

    C. **Email Domains**: Should the requesting Party want certain email domains excluded from the data set against which search terms are tested, the requesting Party must provide a list of such domain names to the producing Party ahead of the producing Party's testing of search terms, and the producing Party shall consider applying the exclusions. Likewise, if the producing Party identifies domains that it believes should be eliminated, it will produce a list of those domain names to the requesting Party, consistent with the ESI Protocol, ¶ IV(D)(2). Any objections to the exclusions of such email domains shall be submitted to the producing Party within five (5) business days after the disclosure to allow the Parties to resolve disputes quickly.

    D. **Targeted Collections**: A store of documents that a producing Party plans to produce in its entirety (e.g., a non-custodial folder containing annual financial reports) should not be included in the data set against which search terms are tested, and a Producing Party should use

---

to do so, and the parties agree that additional meet-and-confers will be necessary to establish the parameters of its use.

      reasonable efforts to so exclude such sets. A producing Party may, however, host these documents within their search software.

  E. **Exception Reporting**: For any documents not otherwise identified as system or operating files (e.g., system files or program executables), the producing Party must disclose processing exceptions that are unresolved at the end of the discovery period, such as documents that cannot be opened due to encryption or other issues.

  F. **Disclosure of Other Culling Parameters Required**: A producing Party is permitted to cull data using the agreed-upon custodial and non-custodial sources, agreed-upon date parameters, and agreed-upon search terms (if applicable), and a producing Party is permitted to remove known system or operating files (e.g., system files or program executables), such as those that appear on the National Software Reference Library (NSRL) hash list, and other methods identified in the ESI Protocol. See ESI Protocol, ¶ IV(A). To the extent a producing Party elects to use additional culling parameters, those parameters will be disclosed. If agreement cannot be reached by the Parties, they will be presented to the Court for resolution.

  G. **Paper Documents**: Unless otherwise agreed by the parties, including pursuant to §II(B)(5), a document existing in paper form and scanned to PDF for purposes of discovery in this litigation will not be subjected to search terms and will be manually reviewed.

  H. **Exclusions from TAR/Search Terms**: TAR shall not be used to exclude text messages, telephone records or calendar entries. Search terms shall not be used to cull (prior to review) inter-Defendant text messages or other inter-Defendant instant messages (e.g., WhatsApp or iMessages). The Producing Party shall use reasonable efforts to identify such inter-Defendant messages to exclude from its search term application process.

## II. SEARCH METHODS

The following TAR and keyword search processes govern how collected data may be electronically culled in this matter. Use of TAR or keyword searches does not relieve the Parties of their obligations under the Federal Rules to identify and produce relevant and responsive documents, including those already known to be responsive. The Parties also acknowledge that the mutually agreed upon (or Court-ordered) date ranges, custodial/non-custodian sources, and other compromises may properly limit the data or other material that is searched, reviewed, and produced,

and nothing in this Search Methodology Order is intended to contradict the Parties' other discovery agreements unless agreed upon by the Parties.

**A.    TAR Search Process:**

    A.    **Use of TAR 1.0.**

        1.    Any party using TAR shall use TAR 2.0 or continuous active learning. No party shall use TAR 1.0 or simple active learning without notifying the requesting Party, per footnote 1 above.

        2.    Any Party may use search terms to identify potentially responsive documents prior to its use of TAR, provided it discloses the search terms used pursuant to Section B below.

    B.    **Producing Party TAR Disclosures:**

        1.    **Use of TAR**: A Party may use TAR to prioritize documents for manual review without disclosure of that use. A Party may elect to use TAR to cull or otherwise limit the volume of unstructured ESI subject to manual review, but that use must be disclosed as follows. A producing Party that elects to use TAR to cull or otherwise limit the volume of unstructured ESI subject to manual review will disclose the following information regarding its use of a TAR process: (a) the name of the TAR software and vendor, (b) a general description of how the producing Party's TAR process will work, including how it will train the algorithm (e.g., by using exemplar documents, keyword search strings, or some other method); (c) a general description of the categories or sources of the documents included or excluded from the TAR process; and (d) a description of the validation process it intends to use.

        2.    **Paper Documents**: The Parties agree that scans of hard copy or other paper documents should not be part of any TAR process.

        3.    **Files Without Extracted Text**: The Parties also agree that any files without extracted text (e.g., video or image files), or other unsearchable files, such as documents that have too little text to be considered by a TAR algorithm, also should not be part of any TAR process.

        4.    **Modification of Process**: A producing Party's disclosure will not preclude it modifying its TAR process, should the original

process prove impracticable in whole or in part. If a producing Party modifies its TAR process, it must comply with the disclosure requirements in Paragraph II(A)(2)(a), and the requesting Party is entitled to time to raise concerns, consistent with Paragraph II(A)(3)(a).

5. After a producing Party has completed its protocol to confirm the appropriateness of its TAR cutoff point (if using TAR), that producing Party need not then conduct any additional review of information subjected to, but not retrieved by, a TAR tool as part of the identification of the subset of information that will be subject to review and production.

C. **Requesting Party Response**: Within 10 business days of the TAR disclosure, the requesting Party may raise with the producing Party any concerns with the proposed TAR process or categories of documents that it proposes should be excluded from the TAR process. The Parties will meet and confer in good faith over any concerns timely raised.

B. **Keyword Search Process:**

   A. **Iterative Process**: Developing efficient keyword search terms is an iterative process and shall require transparent and cooperative efforts by both the Producing and Requesting Party.

   B. **Use of Search Terms**: The Parties may use search terms as a means of selecting the pool of information to be reviewed for responsiveness. The Parties agree that reasonable efforts must be taken to validate the choice of search terms, such as testing the corpus of documents not captured by the proposed search terms to assess the quantity and quality of the information being excluded.

   C. **Search Term Disclosure**: To the extent agreed upon search terms are used to identify potentially responsive ESI, a producing Party will notify the requesting Party of its intent to use search terms and disclose any search software they have decided to use (including version number) and use best efforts to disclose information regarding what stop words have been excluded from the index (if different from the default stop words for the software). If a producing Party elects to use any search platform other than dtSearch, DISCO, or Everlaw, the producing Party will provide the requesting Party with reasonably available search guides and identify any stop words in use.

D. **Search Term Evaluation**: A Producing Party must disclose reasonably available search term hit reports (detailing total hits, total hits plus families, and unique hits for any search terms or search strings) for those search terms or strings for which the parties reached impasse only after meeting and conferring to attempt to narrow the dispute in the absence of a hit count report. The Producing Party may disclose hit count reports at any time voluntarily if it believes such disclosure will advance discussions between the parties.

E. **Production of Exemplars**. Where a producing Party seeks to exclude false positives (aka, "noise hits") by modifying or excluding certain keywords, then it will supply some contextual examples of such false positives to help demonstrate why they must be excluded. Such examples may be provided by a description of the exemplars or the nature of the "false positive." To the extent it may be necessary in some limited circumstances to share the content of a "false positive," such exemplars will not be produced or otherwise used in the litigation, and no Party (other than the party in possession of the document) may retain a copy in any form (whether in the form of a copy of the document itself, a screenshot, or other). No party is obligated to share privileged or highly confidential content that would be subject to redaction under the ESI Protocol if that document were to be produced.

F. **First Phase Search Term Proposals:**

1. **Timing**: *Producing Party Proposes an Initial Set of Search Terms*: Within 14 days of the parties completing their negotiations on all discovery issued as of January 1, 2022, and the Court ruling on any outstanding RFP disputes arising from these negotiations, each producing Party will propose a set of search terms and disclose whether the producing Party intends to use different search terms with different Document Custodians or Sources. The producing Party's proposal will include, to the extent known, semantic synonyms and common variant spellings of the keywords proposed.

2. **Requesting Party's Proposed Revisions**: The requesting Party will provide any proposed revisions to the producing Party's search terms within 14 days.

3. **Producing Party Provides Information Sufficient to Support Its Objections**: Within 14 days thereafter, the

- 6 -

        producing Party will provide information sufficient to support its objections to specific search terms.

4. **Cooperation**: The Parties agree to work together in good faith to *reasonably* increase the number of relevant documents returned and narrow the number of irrelevant documents captured as a result of the search terms. To the extent any disputes remain concerning the sufficiency of the producing Party's information in support of its objections and/or the use of specific search terms after good faith negotiations have occurred, the parties may raise the issue with the Court.

G. **Second Phase Search Term Proposals:**

1. ***Requesting Party Proposes an Additional Set of Search Terms***: The Parties agree that Plaintiffs collectively, and Defendants collectively, may propose one set each of additional search terms to a producing Party. No later than 90 days after the production of an agreed set of Priority Custodian documents by the producing Party, the requesting Party may propose a set of additional search terms.[2] The requesting Party will explain generally the basis for the additional requested terms, which could include, for example, identifying by Bates number exemplar documents that support the request.

    i. After this time set forward in Paragraph II(B)(4)(a) above, if any party wishes to add additional search terms, they may do so if good cause is shown. The producing Party may oppose such request, and if there is impasse, the Court shall resolve any disputes.

2. Producing Party Provides Information Sufficient to Support Its Objections: No later than 30 days after the requesting Party provides an additional set of proposed search terms, the producing Party will respond as to which terms, if any, it agrees to add to their document review process. In providing such a response, the Producing Party should provide information sufficient to support its objections to specific additional search terms.

---

[2] If the Court declines to order the Parties to produce documents for priority custodians as requested by Plaintiffs in the Rule 26(f) Report, this obligation will be triggered by a date to be agreed by the Parties or set by the Court in the absence of the Parties' agreement.

    3. ***Requesting Party and Producing Party Will Meet and Confer Regarding Requesting Party's Proposed Additional Search Terms***: No later than 15 days after the requesting Party proposes an additional set of search terms, the Parties will meet and confer regarding any disputes or counter-proposals regarding the additional search terms. To the extent any disputes remain concerning the sufficiency of the producing Party's information in support of its objections and/or the use of specific additional search terms after good faith negotiations have occurred, either Party may request the assistance of the Court in resolving such disputes.

## C. Good Cause Inability of a Party to Meet the Deadlines Imposed in This Order.

While it is expected that the Parties shall make their best efforts to comply with the deadlines set forth in this Order, it is conceivable that technical (or other) issues or unanticipated volumes may interfere with a Parties' best efforts to comply. Should a Party anticipate that for good cause it may be unable to meet a deadline set forth in this Order, the Party shall promptly raise the issue with the other Parties, explain the reason for the inability to timely comply, and negotiate a reasonable extension for compliance. If the Parties are unable to immediately agree upon a revised deadline for compliance, they shall promptly raise the issue with the Court for resolution. This provision shall not be construed as blanket permission for a Party to modify or extend the deadlines agreed to by the Parties and set forth in this Order without good cause, but rather, to recognize that when dealing with search and review of large volumes of electronically stored information, there are sometimes legitimate, unanticipated challenges that may interfere with a Party's best efforts to fulfill its obligations and therefore, to afford the Parties reasonable flexibility and mutual accommodation should such eventuality occur.

## D. Stopping Criteria and Validation for TAR Process

    A. No party is required to use TAR for any reason; this section applies only to those parties wishing to use a TAR process to eliminate materials from additional human review.

    B. The TAR review process will continue until the producing Party can reasonably conclude that further review is unlikely to yield additional responsive documents (i.e., a Producing Party may establish a "cut-off point."). Any such cut-off point established will require testing of the corpus of materials below that cut-off point and disclosure of the

        that process to the other parties. The testing for this cut-off point is separate from any validation used to test search terms or the adequacy of a party's entire production process.

    C.    The parties acknowledge that different TAR programs may use different methods designed to test its respective cut-off point. This Order is not intended to restrict parties from their choice of a TAR program nor impose a cut-off point validation protocol that would impose additional costs or burdens to implement because it differs from the validation methods built into the program.

    D.    The parties agree that the following cut-off validation methods may be used by a Producing Party:

        1.    The last 1,000 documents identified by TAR and reviewed by humans contains no more than 10% responsive documents and none of the responsive documents is novel and/or more than marginally relevant; or

        2.    the metrics of the Producing Party's chosen TAR indicate that recall is not less than 70%.

    E.    If a Producing Party intends to use a testing method for its TAR cut-off point that is substantially different from those listed above, it must meet-and-confer with all parties about its proposed method.

### III.    USE OF SEARCH TERMS AND TAR

    A.    The use of search terms to pre-cull TAR must be accompanied by a reasonable validation process. To satisfy this requirement, a Producing Party may either:

        1.    Use the Validation Protocol proposed by Plaintiffs in ECF No. 556-1 (§ IV and Appendix A); or

        2.    Use another reasonable validation process, based on statistical sampling and available empirical research. A Producing Party may rely on reasonable methods and guidelines established for that party's chosen TAR software to inform the process. If electing this alternative validation procedure, the Producing Party must describe the alternative validation procedure to the other parties before TAR is run and, if requested, meet-and-confer with the other parties before TAR is run about whether that procedure is adequate. Any disputes concerning the procedure shall be raised with the Court.

## IV. MODIFICATION

Any Party may move to modify this Order upon a showing of good cause.

**SO ORDERED.**

Dated: June 22, 2022    s/*Hildy Bowbeer*
      HILDY BOWBEER
      United States Magistrate Judge