# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE CATTLE AND BEEF ANTITRUST LITIGATION*<br><br>This Document Relates To:<br>*ALL CASES*<br>Case No. 20-cv-1319 | Case No. 20-cv-1319 (JRT/HB)<br><br>**CARGILL, INCORPORATED AND CARGILL MEAT SOLUTIONS CORPORATION'S RESPONSES TO ALL PLAINTIFFS' FIRST SET OF REQUESTS TO ALL DEFENDANTS FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** |

For their response to All Plaintiffs' ("Plaintiffs") First Set of Requests to All Defendants for the Production of Documents and Electronically Stored Information ("the Requests"), Defendants Cargill, Incorporated ("Cargill") and Cargill Meat Solutions Corporation ("CMS") respond as follows:

## PRELIMINARY STATEMENT

Cargill and CMS's investigation into this matter is ongoing. Accordingly, Cargill and CMS reserve the right to alter, amend, or supplement their initial objections and responses as this matter progresses.

The following responses are given without prejudice to Cargill's and CMS's rights to produce evidence of any subsequently discovered facts and/or information that Cargill and CMS may later develop or learn. These responses are made solely for the purpose of and in relation to these coordinated cases.

The fact that Cargill and CMS have objected and/or responded to an individual request shall not be interpreted to imply that responsive documents or information exist (whether or not a response specifies "if any"), or that Cargill or CMS acknowledges the propriety of the request. A response that Cargill or CMS will produce responsive, non-privileged documents does not mean that Cargill and CMS have any responsive documents in their possession, custody or control, but rather means that Cargill or CMS commits to produce any such responsive non-privileged documents identified after a reasonably diligent and proportional search.

By making these objections and responses, Cargill and CMS do not waive their rights to object to the discovery or admissibility of any information described herein on the basis of the attorney-client privilege, work-product doctrine, settlement or mediation privilege, or any other protected privilege.

Cargill and CMS make these responses based on the allegations and claims in Plaintiffs' operative complaints.

Cargill and CMS provide these responses even though it is not possible to respond completely or reasonably estimate the burden or expense of the proposed discovery because, among other things, the parties have not agreed on and the Court has not ordered custodians, non-custodial document sources, search terms, date ranges, and other aspects of discovery. Cargill and CMS have met and conferred and/or will continue to meet and confer in good faith with the Plaintiffs in all of

these coordinated actions regarding agreed custodians and non-custodial document sources, a search methodology protocol and search terms, and date ranges, pursuant to the Order on Stipulation Regarding Coordination, Responding to Complaints, and Case Management (ECF No. 252) ("First Coordination Order") and Second Coordination Order (ECF No. 271).

Cargill and CMS reserve the right to amend these responses for any reason.

Pursuant to the parties' Rule 26(f) Report (ECF No. 282), Cargill and CMS will not produce any documents pursuant to these Requests until after the commencement of rolling productions. Even then, in light of the parties' agreement that no documents need to be produced until the meet-and-confer process on custodians, sources, search methodology, and date range is complete (*see* ECF No. 282), and then only on a rolling basis, Cargill and CMS reserve the right not to produce documents in response to these Requests until there is resolution on the parties' ongoing meet-and-confers on search methodology, and a reasonable time thereafter to search pursuant to that methodology, or as ordered by the Court. Additionally, to the extent that (1) the Requests raise the same objections as those outlined in Requests for Production previously served in these actions and (2) those objections are still the subject of meet-and-confers between the parties or otherwise await resolution, Cargill and CMS reassert them here as asserted in their previous responses but will confer with Plaintiffs upon the resolution of disputed objections

3

asserted in Requests for Production previously served in these actions to discuss the impact, if any, those resolutions have on objections included herein.

## SCOPE LIMITATIONS ON CARGILL AND CMS'S RESPONSES

1.      Cargill objects to these Requests insofar as they attempt to secure discovery from CMS through Cargill, which does not purchase cattle or sell beef.[1] Cargill responds to these requests on behalf of itself only, and not on behalf of CMS or any entities—including Cargill subsidiaries—that are not parties to this litigation. CMS likewise responds to these requests on behalf of itself only, and not on behalf of any entities that are not parties to this litigation.

2.      Cargill and CMS object to these Requests to the extent they seek to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and any Orders which may be entered in this case.

3.      Cargill and CMS object to these Requests to the extent they seek discovery that is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

---

[1] Cargill and CMS maintain that their motions to dismiss for failure to state a claim should have been granted, and Cargill specifically preserves its objection that it should have been dismissed on the additional basis that Plaintiffs' Complaint did not state a claim against Cargill, given that Cargill does not purchase cattle or sell beef.

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

4.     Cargill and CMS object to these Requests to the extent they seek discovery that is not directly related to the claims or defenses at issue in this litigation. Any Request that encompasses time periods, activities, or locations beyond those at issue in this case is overly broad.

5.     Cargill and CMS object to the production of any electronically stored information that is not reasonably accessible, or that cannot be compiled or produced without unreasonable investments in time and expense. Cargill and CMS further object to these Requests to the extent they purport to require a search beyond the scope of permissible discovery contemplated by Federal Rule of Civil Procedure 26(b)(2)(C) and the ESI Protocol and related agreements ultimately reached by the parties, or as further ordered by the Court.

6.     Unless expressly stated otherwise in a response to a Request, as by referring to structured data, Cargill and CMS object to any search for production of nonprivileged, responsive documents beyond documents in the files of identified Document Custodians or agreed noncustodial sources. "Document Custodians" means the persons who Cargill or CMS and Plaintiffs agree, or the Court orders, shall have the documents in their possession, custody, or control collected and searched for purposes of discovery in these coordinated cases.

7.     Cargill and CMS object to these Requests to the extent they encompass activities or locations beyond those at issue in this case. Unless otherwise stated, Cargill and CMS's search for responsive documents is limited to those located within and relating to the United States.

8.     Cargill and CMS object to these Requests to the extent they attempt or purport to seek documents and/or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege held by Cargill and CMS. The inadvertent production of any document shall not constitute a waiver of Cargill and CMS's rights or privileges. Cargill and CMS reserve the right to seek the return of any inadvertently produced documents in accordance with the applicable Protective Order. If production of a document is deemed to be a waiver of a right or privilege, that waiver shall be a limited waiver pertaining to that document only.

9.     Cargill and CMS object to these Requests to the extent they seek confidential business information, proprietary information, commercially sensitive information, competitively significant information, protected health information, personal information related to Cargill and CMS's employees, and/or trade secrets of Cargill and CMS, their predecessors, and/or third parties. Cargill and CMS intend to produce documents subject to the applicable Protective Order in this matter, where appropriate, but reserve the right to seek further protections if needed.

10.     Cargill and CMS object to Plaintiffs' Requests where they seek "All Documents" concerning a particular topic because they seek Documents and ESI from sources or locations that are outside the scope of a reasonable search of appropriate custodian files and non-custodial sources, or they seek information that is not reasonably accessible. Cargill and CMS are not required to attempt to search for and produce every document from all possible sources or locations under the Federal Rules. Cargill and CMS further object to requests for "all Documents" to the extent the requests call for the production of duplicate documents in contravention of the ESI Protocol. Cargill and CMS will produce documents consistent with the ESI Protocol's (ECF No. 93) provisions regarding de-duplication.

11.     Cargill and CMS object to the Requests as premature to the extent they seek the production of documents relating to information that is properly the subject of expert analysis. Cargill and CMS will produce responsive, non-privileged documents relating to the subjects of expert analysis at the time called for by any applicable scheduling order in this action, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Minnesota or any other applicable local rules, case law or court orders.

## OBJECTIONS TO PLAINTIFFS' INSTRUCTIONS

1.     Cargill and CMS object to Plaintiffs' Requests and Instructions because document custodians and, to some extent, non-custodial document sources, have

not been fully agreed to by the parties or ordered by the Court, and thus it is not possible to reasonably estimate the burden or expense of the requested discovery. Accordingly, Cargill and CMS reserve the right to amend their objections if their responses, together with determinations regarding custodians and non-custodial sources and date ranges, will create an undue burden and cost.

2.      Cargill and CMS object to Plaintiffs' Requests and Instructions to the extent Plaintiffs seek the production of "documents . . . no later than 30 days after the commencement of discovery." Cargill and CMS will make productions of documents on the timeline stated above.

3.      As Plaintiffs' Requests incorporate by reference "all instructions set forth in the *Cattle* Plaintiffs' June 19, 2020 First Set of Requests to All Defendants for the Production of Documents and Electronically Stored Information (*Cattle*, 3:19-cv-1222)" ("First *Cattle* Requests") except that "to the extent Plaintiffs and Defendants have agreed in writing to modifications during the meet and confer process, such modifications shall apply herein," Cargill and CMS likewise incorporate by reference their objections to the Instructions in the First *Cattle* Requests[2] but agree that "to the extent Plaintiffs and Defendants have agreed in writing to modifications during the meet and confer process, such modifications

---

[2] *See* Defendants Cargill, Incorporated and Cargill Meat Solution Corporation's Response to Plaintiffs' First Set of Requests to All Defendants for the Production of Documents and Electronically Stored Information (July 20, 2020).

shall apply herein." Cargill and CMS further object to the instruction that, "unless otherwise specified, all documents must be organized and labeled to correspond to the categories in the associated document request." Cargill and CMS will produce documents as they are maintained in the ordinary course of business, as permitted by Federal Rule of Civil Procedure 34(b), and in accordance with the Court's Order Regarding Production of Electronically Stored Information and Paper Documents.

4.     Cargill and CMS object to the instruction that a date range of January 1, 2006 through December 31, 2021 applies to all Requests for the production of Structured Data and that a date range of January 1, 2012 through June 30, 2020 applies to all other Requests for production, unless specified otherwise. Cargill and CMS further object to the instructions that "if a Document prepared before January 1, 2012 is necessary for a correct and/or complete understanding of any Document covered by the Request, such earlier Document shall be produced" and that "[i]f any Document is undated, or the data of its preparation cannot be determined, the Document shall be produced if otherwise responsive to the Request." The parties are asking the Court to determine the applicable date ranges, and Cargill and CMS will apply the date ranges that are ordered and will otherwise abide by all applicable requirements specified in the Order Regarding Production of Electronically Stored Information and Paper Documents (ECF No. 93) ("ESI Protocol").  In their responses, consistent with their date range proposal, unless

9

otherwise indicated, Cargill and CMS use the presumptive date ranges of: January 1, 2010 to June 30, 2020 for requests seeking structured data; January 1, 2012 to June 30, 2020 for requests or responses on a "sufficient to show" basis; and January 1, 2014 to June 30, 2020 time period for requests seeking unstructured data.

5.      Cargill and CMS object to Plaintiffs' assertion that they will "meet and confer . . . regarding the appropriate custodians whose email accounts and other Documents should be searched in responding to these requests and whether any search terms or other culling parameters are appropriate." Cargill and CMS have already met and conferred with Plaintiffs in these coordinated cases regarding Cargill and CMS's custodians and anticipate seeking Court resolution on whether any additional custodians are necessary and proportionate. Cargill and CMS, along with other Defendants, are also already meeting and conferring with Plaintiffs in these coordinated cases on a search methodology protocol, and that protocol (or any protocol as ordered by the Court) will govern Cargill and CMS's searching and production in response to these Requests and any future requests.  Cargill and CMS will not negotiate separate custodians or sources, or different search methodologies, for different sets of requests for production.

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS

1.      Cargill and CMS object to Plaintiffs' incorporation by reference of all "definitions and abbreviations in *Cattle* Plaintiffs' Third Consolidated Amended Class Action Complaint" (Case No. 19-cv-1222, ECF No. 321) ("*Cattle* Operative

Complaint") as unduly burdensome to the extent the definitions are not specifically incorporated herein and, further, to the extent the definitions themselves are otherwise objectionable for any reason.

2.      With respect to each of Plaintiffs' definitions that incorporate by reference other defined terms to which Cargill and CMS object, Cargill and CMS incorporate by reference their objections to those other defined terms.

3.      Cargill and CMS object to Plaintiffs' definition of the terms "You" and "Your" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. Plaintiffs have not named any predecessors, subsidiaries (other than CMS, as it relates to Cargill) or affiliates, successors, parents (other than Cargill, as it relates to CMS), partners, divisions, predecessors, successors, representatives, agents, attorneys, assigns or other entities or individuals acting or purporting to act in their behalf or at their direction, as parties in this litigation. In response to requests using the terms "You," "Your," or "Your Company," Cargill responds only on behalf of the entity Cargill, Incorporated, and CMS responds only on behalf of the entity Cargill Meat Solutions Corporation.

4.      Cargill and CMS object to Plaintiffs' definition of "Beef" because it is overly broad and unduly burdensome, calls for the production of documents that are not relevant to any party's claim or defense, is inconsistent with the definition of the term in certain of Plaintiffs' Complaints, and is not proportional to the needs

11

of the case. In responses to requests involving "Beef," Cargill and CMS limit their responses to "boxed beef," or as defined in any agreement reached between the parties, or as ordered by the Court.

5.      Cargill and CMS object to Plaintiffs' definition of "Commercial Cattle" to the extent it incorporates by reference the term "beef" as defined by Plaintiffs. Pursuant to the parties' January 27, 2022 correspondence, Cargill and CMS are willing to meet and confer with Plaintiffs regarding the definition of the term "Commercial Cattle."

6.      Cargill and CMS object to Plaintiffs' definition of the term "Commercial Cattle Purchase Data" to the extent it incorporates by reference the term "Commercial Cattle." Cargill and CMS further object to this request as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it contains 26 subparts and calls for the production of documents and fields of data or structured data that are irrelevant to the claims and defenses in this matter, that Cargill and CMS do not maintain in the ordinary course of business, or that would otherwise be unduly burdensome to produce. Cargill and CMS will continue to meet and confer in good faith with Plaintiffs regarding responsive structured data that is maintained in the ordinary course of business.

7.      Cargill and CMS object to Plaintiffs' definition of the term "Communications" and will apply the definition of "Communications" that the

parties have globally negotiated ("any recorded means of transmitting information between people or entities, including emails, faxes, phone calls, and letters, and documents that reflect communications").

8. Cargill and CMS object to Plaintiffs' definition of the term "ESI" or "electronically stored information" to the extent such definition seeks to impose burdens or obligations on Cargill and CMS beyond those imposed by the Federal Rules of Civil Procedure, or any applicable local rule, case law, or court order, including the ESI Protocol. Cargill and CMS further object to the definition of the terms "electronically stored information" and "ESI" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent the Requests using this term seek (a) material not in the possession, custody, or control of Cargill and CMS; (b) production of ESI from sources that are not reasonably accessible in light of the burdens and/or costs required to locate, restore, review, and produce whatever responsive information may be found; or (c) seek information that is not relevant to the claims or defenses of any party to this action.

9. Cargill and CMS object to Plaintiffs' definition of the term "Other Packer" as overly broad and unduly burdensome. Cargill and CMS will meet and confer with Plaintiffs regarding an appropriate "closed list" definition of this term.

10. Cargill and CMS object to Plaintiffs' definition of "price" or "pricing" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the

needs of the case to the extent it includes more than actual prices, including actual price increases or decreases, and seeks information that is not relevant to the claims or defenses of any party to this action.

11.     Cargill and CMS object to Plaintiffs' definition of "Producer" to the extent it incorporates the term Commercial Cattle and the undefined terms Packers and Employees, and as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it includes not just a "person engaged in the business of selling fed cattle and/or Commercial Cattle to a Packer for slaughter" but also a long list of affiliates, related entities or persons, or agents.

12.     Cargill and CMS object to Plaintiffs' definition of the term "Structured Data" or "Structured Database" and note that the parties have agreed to discuss the meaning of this term in ongoing meet-and-confers over structured data.

13.     For clarity, Cargill and CMS limit the scope of all of their responses herein to Cargill's (if any) and CMS's activities within the United States.

14.     Pursuant to Federal Rule of Civil Procedure 34(b)(2)(C), Cargill and CMS specifically state in their objections and responses herein when Cargill and CMS will limit their productions based on an objection to part or all of a request.

## OBJECTIONS AND RESPONSES TO REQUESTS

**REQUEST NO. 1: To the extent not agreed to be produced pursuant to *Cattle* Request 2,[3] transaction-level data for all Your purchases, sales, trades, or any**

---

[33] *See* First Set of Requests.

**other transaction of or in Commercial Cattle, including all Commercial Cattle Purchase Data. Plaintiffs request this information in the most disaggregated form in which it is kept, and Defendants should produce the data in a comma-delimited text file. If You maintain separate or distinct sets of such data, Plaintiffs' request is for each separate set of data.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined terms "Your," "Commercial Cattle," and "Commercial Cattle Purchase Data" as set forth above. Cargill and CMS further object to this request to the extent that it provides instructions to "Defendants;" Cargill and CMS respond only on behalf of Cargill and CMS. Cargill and CMS further object to this request as vague and ambiguous as to the terms "trades" and "other transaction." Cargill and CMS further object to this request as ambiguous in that it requests "reports . . . received from third parties." Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs and calls for documents to be produced in a manner that is inconsistent with the ESI Protocol's provisions. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome, calls for the production of documents that are not relevant to any party's claim or defense, including but not limited to data related to the purchase of commercial cattle, and is not proportional to the needs of the case. Data related to the purchases, sales, trades, or any other transaction of or in Commercial Cattle, including Commercial Cattle Purchase Data, is irrelevant to these cases. Even if some limited data related to Commercial Cattle might be marginally relevant, Plaintiffs' Request, as drafted,

15

is overly broad, unduly burdensome, and not proportionate to the needs of this litigation.

Cargill and CMS decline to produce any data in response to this Request as drafted. Cargill and CMS are, however, willing to meet and confer with Plaintiffs to hear why Plaintiffs believe some limited data might be relevant and proportional.

**REQUEST NO. 2: All Structured Data showing the individual transactions You made to sell the "drop credit" (*e.g.*, hide, head, organs, and blood) of fed cattle slaughtered in the United States. For each transaction, this includes, but is not limited to:**

    **a.    the terms of each sale, including:**
        **i.    date of sale;**
        **ii.    all pricing information concerning the sale, including any price formulas or indices utilized, shipping, tax, or similar charges, and the gross and net unit price for each item in the sale;**
        **iii.    contract type;**
        **iv.    agreed delivery period;**
        **v.    the quantity (and units of measure) for each sale;**
        **vi.    the currency in which the sale was billed and paid; and**
        **vii.    any discounts, rebates, credits, freight allowances, returns, free goods, and/or services or any other pricing adjustment for each sale, with sufficient information to attribute these adjustments to individual sales transactions;**
    **b.    product id number;**
    **c.    product description;**
    **d.    whether the product in each such sale was fresh, frozen, or chilled;**
    **e.    cattle type from which the drop credit in each such sale was produced (*e.g.*, steer, heifer, cow, bull, or mixed, and breed);**
    **f.    any unique number associated with each transaction (*e.g.*, invoice number or purchase order number);**
    **g.    the name and address of the location(s) from which the drop credit was produced and shipped for each such transaction;**

h.    the purchaser's name (both the bill to name and the ship to name as well as any purchaser ID number), phone number(s), address(es) (including any bill to and ship to address(es)), and/or email address(es) for each such sale;

i.    the sales channel in which the customer operates;

j.    parent company of the customer;

k.    the date You shipped the drop credit, the date You billed for the drop credit, and the date the purchaser took delivery for each such sale;

l.    any record of Your profit from each such sale;

m.    indication of cancellations and returns, including indication of quantity cancelled or returned and method to link a cancellation or return with each such sale;

n.    the sum ultimately paid by the purchaser for each such sale, excluding the addition of any taxes or delivery charges, and the data points used to calculate that sum, including, for example, base price, rebates, discounts, credits;

o.    any Structured Database field summarizing terms of each such sale or agreements or contracts as well as a field specifying the contract number; and

p.    any other data available in Your databases Concerning each such sale.

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined terms "Structured Data," "You" and "Structured Database" as set forth above. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome, calls for the production of documents that are not relevant to any party's claim or defense, and is not proportional to the needs of the case.

17

Cargill and CMS further object that the parties are already required to meet and confer regarding reasonable queries to be made for discoverable information in a structured database pursuant to the ESI Protocol (ECF No. 93, § V.D) and Order Regarding Stipulation Regarding Case Management Issues (ECF NO. 271), and this request is unduly burdensome to the extent it purports to impose requirements on Cargill and CMS beyond those to be agreed by the parties as part of the Structured Data meet-and-confer process or as further ordered by the Court.

Cargill and CMS decline to produce any data in response to this Request as drafted. Cargill and CMS are, however, willing to meet and confer with Plaintiffs to hear why Plaintiffs believe some limited data might be relevant and proportional.

**REQUEST NO. 3: Documents and Communications discussing or analyzing the timing of the cattle cycle and/or how the actual and/or expected cattle cycle impacts actual or expected fed cattle prices or forecasts of fed cattle prices.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined term "Communications" as set forth above. Cargill and CMS further object to this request as vague and ambiguous in that the terms "cattle cycle," "impacts," and "forecasts" are undefined. Cargill and CMS further object to the extent this request could be construed to call for expert discovery. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further

object that this request, including its time period, is overly broad and unduly burdensome, calls for the production of documents that are not relevant to any party's claim or defense, and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, applying the negotiated term Cattle[4] where this request refers to "fed cattle," and limiting the response to prices of Cattle within the United States, Cargill and CMS will produce responsive, non-privileged documents to the extent they exist in Cargill's or CMS's possession, custody, or control, are able to be located through a reasonable search of Document Custodians and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020.

**REQUEST NO. 4: Documents and Communications sufficient to show: (a) industrywide standards and definitions relating to fed cattle breeds, grades, or other characteristics; and (b) Your standards and programs for cattle procurement (*e.g.*, cattle breeds, fed, antibiotics, halal, organic).**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined term "Your" as set forth in Cargill's Objections to Plaintiffs' Definitions in Cargill's Responses and Objections to DPP Plaintiffs' First

---

[4] The parties across all cases in this coordinated action globally agreed on the following definition of "Cattle": "fed cattle, *i.e.*, steers and heifers raised on a high energy diet and fed for the production of high-quality beef products in the United States."

Set of Requests for Production. Cargill and CMS further object to this request as vague and ambiguous in that the terms "industrywide standards and definitions," "or other characteristics," and "standards and programs for cattle procurement" are undefined. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome, calls for the production of documents that are not relevant to any party's claim or defense, and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, applying the negotiated term Cattle where this request refers to "fed cattle," and limiting the response to standards, definitions, and programs within the United States, Cargill and CMS will produce the following responsive, non-privileged documents to the extent they exist in Cargill's or CMS's possession, custody, or control, are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2012 through June 30, 2020: documents or Communications sufficient to show industrywide standards for and definitions of Cattle breeds, grades, or other characteristics relevant to Cattle procurement. Cargill and CMS will meet and confer with Plaintiffs on the meaning of "standards and

programs for cattle procurement" and an appropriate scope of production in response.

**REQUEST NO. 5: Documents and Communications discussing or analyzing the impact of the characteristics of fed cattle, including cattle weight, breed, quality, certified program, grade, geographic location, and other factors, on: (a) the price of fed cattle; and/or (b) the price of Beef fabricated from such fed cattle.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined terms "Beef" and "Communications" as set forth above. Cargill and CMS object to this request as vague and ambiguous in that the terms "impact," "characteristics," "certified program," and "fabricated" are undefined. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object to the extent this request could be construed to call for expert discovery. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, applying the negotiated term Cattle where this request refers to "fed cattle," and limiting the response to prices of Cattle and Beef within the United States, Cargill and CMS will produce responsive, non-privileged

documents and Communications to the extent they exist in Cargill's or CMS's possession, custody, or control, are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020.

**REQUEST NO. 6: Documents and Communications sufficient to describe Your fed cattle slaughtering and fabrication processes, including any changes made to these processes from January 1, 2006, to present.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined terms "Your" and "Communications" as set forth above. Cargill and CMS further object to this request as vague and ambiguous in that the terms "slaughtering and fabrication processes" and "changes" are undefined. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome, calls for the production of documents that are not relevant to any party's claim or defense, and is not proportional to the needs of the case. Cargill and CMS further object to this Request as better suited to an interrogatory.

Notwithstanding and without waiving these objections, Cargill and CMS will meet and confer with Plaintiffs on the meaning of "fed cattle slaughtering and fabrication processes" and an appropriate scope of production in response, if such documents exist.

**REQUEST NO. 7: Documents and Communications discussing or analyzing: (a) the impact of fed cattle and/or Beef imports and exports on U.S. fed cattle prices; and/or (b) reasons for importing or exporting or not importing or exporting fed cattle and/or Beef.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined terms "Beef" and "Communications" as set forth above. Cargill and CMS further object to this request as vague and ambiguous in that the terms "impact" and "reasons" are undefined. Cargill and CMS further object to this request as ambiguous in that it requests "reports . . . received from third parties." Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object to the extent this request could be construed to call for expert discovery. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome, and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the General Objections and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, applying the negotiated term Cattle where this request refers to "fed cattle," and limiting the response to imports into and exports out of the United States, Cargill and CMS will produce responsive, non-privileged documents and Communications to the extent they exist in Cargill's or CMS's possession, custody, or control, are able to be located through a reasonable search

of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020.

**REQUEST NO. 8: Documents and Communications discussing or analyzing the effects of the Tyson Holcomb Plant fire and/or COVID-19 on the U.S. market for fed cattle and/or the U.S. market for Beef.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined term "Beef" and "Communications" as set forth above. Cargill and CMS further object to this request as vague and ambiguous in that the terms "effects" and "market" are undefined, particularly to the extent that "effect" and "market" could be construed to call for expert discovery. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome, calls for the production of documents that are not relevant to any party's claim or defense, including specifically insofar as it seeks documents related to COVID-19, and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, and applying the negotiated term Cattle where this request refers to "fed cattle," Cargill and CMS will produce responsive, non-privileged documents and Communications to the extent they exist in Cargill's or

CMS's possession, custody, or control, are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020.

**REQUEST NO. 9: Documents and Communications discussing or analyzing the perishable nature of fed cattle and/or market access risk faced by U.S. fed cattle Producers. In this Request, "market access risk" has the meaning given to it by ¶294 of the *Cattle* Operative Complaint, namely "the availability of a timely and appropriate market outlet."**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined terms "Communications" and "Producers" as set forth above. Cargill and CMS further object to this request as vague and ambiguous in that the terms "perishable nature," "faced by," and "timely and appropriate market outlet" are undefined. Cargill and CMS further object that the term "market access risk," even as defined herein, is vague and ambiguous and may be construed to call for expert discovery. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome, calls for the production of documents that are not relevant to any party's claim or defense, and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, and applying the negotiated term Cattle where

25

this request refers to "fed cattle," Cargill and CMS will produce the following responsive, non-privileged documents to the extent they exist in Cargill's or CMS's possession, custody, or control, are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020: documents and Communications referring to or analyzing the effect(s) of the perishable nature of Cattle on Cattle procurement.

**REQUEST NO. 10: Documents and Communications discussing or analyzing the: (a) short run and/or long run supply elasticity of fed cattle; and/or (b) short run and/or long run price elasticity of fed cattle.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined term "Communications" as set forth above. Cargill and CMS further object to this request as vague and ambiguous in that the terms "short run and/or long run supply elasticity" and "short run and/or long run price elasticity" are undefined and may be construed to call for expert discovery. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome, calls for the production of documents that are not relevant to any party's claim or defense, and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, and applying the negotiated term Cattle where this request refers to "fed cattle," and limiting the response to elasticity within the United States, Cargill and CMS will produce the following responsive, non-privileged documents to the extent they exist in Cargill's or CMS's possession, custody, or control, are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020: documents analyzing or discussing the supply and price elasticity of Cattle.

**REQUEST NO. 11: Documents and Communications discussing or analyzing actual or potential substitutes for fed cattle and/or actual or potential substitute markets into which fed cattle could be sold.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined term "Communications" as set forth above. Cargill and CMS further object to this request as vague and ambiguous in that the terms "actual or potential substitutes," "actual or potential substitute markets" and "could be sold" are undefined and to the extent they may be construed to call for expert discovery. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and

27

unduly burdensome, particularly in its call for "potential substitutes" and "potential substitute markets," and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, and applying the negotiated term Cattle where this request refers to "fed cattle," Cargill and CMS will produce the following responsive, non-privileged documents to the extent they exist in Cargill's or CMS's possession, custody, or control, are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020: documents discussing or analyzing actual or potential substitutes for Cattle in the United States as actual or potential substitutes and/or discussing or analyzing actual or potential substitute markets into which Cattle in the United States could be sold as actual or potential substitute markets.

**REQUEST NO. 12: Documents and Communications discussing or analyzing: (a) the influence or effect of alternative marketing agreements/captive supply agreements (*e.g.*, formula, forward, top-of-the-market, and cost-plus agreements) on cash fed cattle purchases and prices; and/or (b) reasons for increasing, decreasing, or changing the volume of fed cattle procured on alternative marketing agreements/captive supply agreements and/or in the cash market.**

**RESPONSE:**  Cargill and CMS object to this request by incorporating by reference their objections to the defined term "Communications" as set forth above. Cargill

and CMS further object to this request as vague and ambiguous in that the terms "influence or effect," "alternative marketing agreements," "captive supply agreements," and "reasons" are undefined. Cargill and CMS further object to the extent this request could be construed to call for expert discovery and/or privileged documents. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome, calls for the production of documents that are not relevant to any party's claim or defense, and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, applying the negotiated term Cattle where this request refers to "fed cattle," and limiting the response to agreements for purchases within the United States, Cargill and CMS will produce responsive, non-privileged documents and Communications to the extent they exist in Cargill's or CMS's possession, custody, or control, are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020.

**REQUEST NO. 13: Documents and Communications discussing or analyzing the determinants of the "meat margin" (*Cattle* Operative Complaint, ¶5).**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined term "Communications" as set forth above. Cargill and CMS further object to this request as vague and ambiguous in that the terms "determinants" and "meat margin" are undefined. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object to the extent this request could be construed to call for expert discovery. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome, calls for the production of documents that are not relevant to any party's claim or defense, and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, Cargill and CMS will produce the following responsive, non-privileged documents to the extent they exist in Cargill's or CMS's possession, custody, or control, are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020: documents and Communications discussing or analyzing factors impacting the profitability of sales of Beef in the United States.

30

**REQUEST NO. 14: Documents and Communications discussing or analyzing the effect of Other Packers on the market for fed cattle, including fed cattle demand, supply, prices, and competition.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined terms "Communications" and "Other Packers" as set forth above. Cargill and CMS further object to this request as vague and ambiguous in that the terms "effect," "market for fed cattle," "demand," "supply, "prices," and "competition" are undefined and to the extent they may be construed to call for expert discovery. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome, calls for the production of documents that are not relevant to any party's claim or defense, and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, applying the negotiated term Cattle where this request refers to "fed cattle," and limiting the response to the U.S. Cattle market, Cargill and CMS will produce responsive, non-privileged documents and Communications to the extent they exist in Cargill's or CMS's possession, custody, or control, are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020.

31

**REQUEST NO. 15:  Documents and Communications relating to any weekly purchase or "trading windows" (*Cattle* Operative Complaint, ¶158) for fed cattle transactions, whether employed by you, a Defendant, or an Other Packer, including the factors that may influence when to conduct cash cattle transactions during the weekly cash cattle trade.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined terms "Communications," "Defendant," and "Other Packer" as set forth above. Cargill and CMS further object to this request as vague and ambiguous in that the terms "weekly purchase," "trading windows," transactions," "factors," and "influence" are undefined and/or purport to incorporate by reference allegations from the *Cattle* Operative Complaint. Cargill and CMS further object to this request as ambiguous in that it requests documents and communications relating to "factors that may influence when to conduct cash cattle transactions." Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome, particularly to the extent it calls for documents relating to "factors that *may* influence" (emphasis added) and in its use of the term "Other Packer", calls for the production of documents that are not relevant to any party's claim or defense, and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, applying the negotiated term Cattle where this

request refers to "fed cattle," and limiting the response to procurement of Cattle in the United States, Cargill and CMS will produce the following responsive, non-privileged documents and Communications to the extent they exist in Cargill's or CMS's possession, custody, or control, are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020: Documents and Communications discussing or referring to any weekly purchase or trading "windows" for Cattle transactions. Cargill and CMS will meet and confer with Plaintiffs regarding an appropriate definition of "Other Packers."

**REQUEST NO. 16: Documents and Communications discussing or analyzing any seasonal changes in U.S. fed cattle procurement, including, but not limited to, seasonal factors impacting finished fed cattle availability or Beef demand.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined terms "Communications" and "Beef" as set forth above. Cargill and CMS further object to this request as vague and ambiguous in that the terms "seasonal changes," "seasonal factors," "impacting," "finished fed cattle availability," and "demand" are undefined. Cargill and CMS further object to this request to the extent it may be construed to call for expert discovery. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome,

33

calls for the production of documents that are not relevant to any party's claim or defense, and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, and applying the negotiated term Cattle where this request refers to "fed cattle," Cargill and CMS will produce the following responsive, non-privileged documents to the extent they exist in Cargill's or CMS's possession, custody, or control, are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020: documents and Communications discussing or analyzing trends in seasonal changes in U.S. Cattle procurement.

**REQUEST NO. 17: Documents and Communications relating to the opening, construction, expansion, and/or sale of one or more of: (a) Your U.S. fed cattle harvest and/or fabrication facilities; and/or (b) another Defendants' or Other Packer's U.S. fed cattle harvest and/or fabrication facilities.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined terms "Your," "Communications," "Defendants" and "Other Packer" as set forth above. Cargill and CMS further object to this request as vague and ambiguous in that the terms "opening," "construction," "expansion," "sale," and "harvest and/or fabrication facilities" are undefined. In their response, Cargill and CMS will interpret "harvest and/or fabrication facilities" to mean primary

processing facilities for Cattle in the United States (and not facilities that do not harvest Cattle). Cargill further objects that it does not own or maintain any fed cattle harvest and/or fabrication facility. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome to the extent it can be construed as calling for the production of *all* documents and communications relating to the opening, construction, expansion, and/or sales of any of Cargill and CMS's U.S. Cattle harvest and/or fabrication facilities, calls for the production of documents that are not relevant to any party's claim or defense, and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, and applying the negotiated term Cattle where this request refers to "fed cattle," Cargill and CMS will produce the following responsive, non-privileged documents to the extent they exist in Cargill's or CMS's possession, custody, or control, and are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files: (a) documents created during the time period from January 1, 2012 through June 30, 2020 sufficient to show (i) when  any Cargill or CMS Cattle harvest and/or

fabrication facility was opened, constructed, expanded, and/or sold, and (ii) costs associated with the opening, construction, or expansion of any Cargill or CMS Cattle harvest and/or fabrication facility; and (b) documents created during the time period from January 1, 2014 through June 30, 2020 relating to the opening, construction, expansion, and/or sale of one or more of another Defendant's or Other Packer's U.S. fed cattle harvest and/or fabrication facilities.

**REQUEST NO. 18: All documents relating to any boycott of fed cattle Producers or feedlots by any Defendant or any Other Packer, including regional boycotts.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined terms "Producers" and "Other Packer" above. Cargill and CMS further object to this request as vague and ambiguous in that the terms "boycott," "feedlots," and "regional boycotts" are undefined. Cargill and CMS further object to this request as overbroad and seeking irrelevant documents to the extent it seeks information about "boycotts" by "any other Packer," as the complaints in these cases do not allege any anticompetitive activity by non-Defendants. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome, calls for the production of documents that are not relevant to any party's claim or defense, and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, and applying the negotiated term Cattle where this request refers to "fed cattle," Cargill and CMS will produce responsive, non-privileged documents to the extent they exist in Cargill's or CMS's possession, custody, or control, are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020, except that Cargill and CMS will not produce documents solely about Other Packers.

**REQUEST NO. 19: All documents concerning Witness 1, Witness 2, and/or Mr. Hooker, as referenced in the *Cattle* Operative Complaint.**

**RESPONSE:** Cargill and CMS object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome, calls for the production of documents that are not relevant to any party's claim or defense, and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, Cargill and CMS will produce responsive, non-privileged documents concerning Jason Fullerton (Witness 1), Matt Thompson (Witness 2), or James Hooker, to the extent they exist in Cargill's or CMS's

37

possession, custody, or control, are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020.

**REQUEST NO. 20: All documents regarding persons and entities, other than you or your employees, you listed under Federal Rule of Civil Procedure 26(a)(1)(A)(i) or (ii) in your Initial Disclosures in any of the coordinated actions (as amended from time to time), including all Communications with those persons and entities.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined term "Communications" as set forth above. Cargill and CMS further object to this request to the extent the term "you" is undefined; in the context of this request, Cargill and CMS interpret "you" to mean Cargill and CMS, respectively. Cargill and CMS further object to this request to the extent the term "your employees" is undefined; in the context of this request, Cargill and CMS interpret "your employees" to mean any of Cargill's current or former employees or executives and CMS's current or former employees or executives, respectively, named in Cargill and CMS's initial disclosures, as may be amended from time to time. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome insofar as it calls for the production of all documents relating to and communications with individuals named or referred to in Cargill and CMS's initial

38

disclosures, regardless of their relation to Plaintiffs' claims and Cargill and CMS's defenses, and is not proportional to the needs of the case as, for example, it would include all communications with all U.S. government officials and all Plaintiffs in all of the coordinated cases regardless of relevance.

Cargill and CMS decline at this time to produce any documents in response to this request but will meet and confer to determine an appropriate scope of production.

**REQUEST NO. 21: Documents and Communications discussing or analyzing the product and geographic scope of any markets in the United States for the sale of fed cattle and/or the sale of Beef.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined term "Beef" as set forth above. Cargill and CMS further object to this request as vague and ambiguous, including in that the terms "product," "geographic scope," "markets," and "sale" are undefined and to the extent they may call for expert discovery. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome and is not proportional to the needs of the case.

39

Cargill and CMS decline at this time to produce any documents in response to this request but will meet and confer with Plaintiffs on the meaning of "the product and geographic scope of any markets . . . ."

**REQUEST NO. 22: Documents and Communications discussing or analyzing the allocation of Your cattle harvest and fabrication capacity between fed cattle and Commercial Cattle, including actual or potential changes to Your allocation of that capacity between cattle types.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined terms "Your" and "Commercial Cattle" as set forth above. Cargill and CMS further object to this request as vague and ambiguous in that the terms "allocation," "cattle harvest," "fabrication capacity," "actual or potential changes," "capacity," and "cattle types" are undefined. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome and is not proportional to the needs of the case. Cargill and CMS further object that this request calls for the production of documents that are not relevant to any party's claim or defense in that Plaintiffs have not alleged a conspiracy to reduce the procurement and production of fed cattle (Cattle) by artificially allocating procurement and production to other types of cattle (including cows).

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are

40

incorporated herein by reference, Cargill and CMS will produce responsive, non-privileged documents to the extent they exist in Cargill's or CMS's possession, custody, or control, are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020.

**REQUEST NO. 23: Documents and Communications relating to international supply, international demand, import levels, export levels, import prices, and/or export prices of Beef, including their relation to and/or impact on the price of Beef in the United States.**

**RESPONSE:** Cargill and CMS object to this request by incorporating by reference their objections to the defined terms "Beef" as set forth above. Cargill and CMS further object to this request as vague and ambiguous in that the terms "international supply," "international demand," "import levels," "export levels," "import prices," "export prices," "relation," and "impact" are undefined and to the extent they may be construed to call for expert discovery. Cargill and CMS further object to the extent this request calls for documents that are publicly available or equally accessible to Plaintiffs. Cargill and CMS further object that this request, including its time period, is overly broad and unduly burdensome, calls for the production of documents that are not relevant to any party's claim or defense, including documents that have no relation to the price of beef or demand for Cattle in the U.S., and is not proportional to the needs of the case.

Notwithstanding and without waiving these objections, and subject to the Scope Limitations and Objections to Plaintiffs' Instructions above which are incorporated herein by reference, Cargill and CMS will produce the following responsive, non-privileged documents to the extent they exist in Cargill's or CMS's possession, custody, or control, are able to be located through a reasonable search of Document Custodian and agreed non-custodial sources files, and were created during the time period from January 1, 2014 through June 30, 2020: documents and Communications materially devoted to discussing or analyzing the international supply, international demand, import levels, export levels, import prices, and/or export prices of Beef and that bear on the price of Beef, as defined by Cargill and CMS, in the United States.

Dated: February 10, 2022

<u>s/ Holley C. M. Horrell</u>
X. Kevin Zhao, Reg. No. 0391302
Holley C. M. Horrell, Reg. No. 0399636
Davida S. McGhee, Reg. No. 0400175
**GREENE ESPEL PLLP**
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
Tel.: (612) 373-0830
kzhao@greeneespel.com
hhorrell@greeneespel.com
dwilliams@greeneespel.com

Britt M. Miller. (*pro hac vice*)
Matthew Provance (*pro hac vice*)
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

William H. Stallings (*pro hac vice*)
**MAYER BROWN LLP**
1999 K Street, NW
Washington, DC 20006-1101
(202) 263-3338
wstallings@mayerbrown.com

*Counsel for Defendants Cargill,*
*Incorporated and Cargill Meat Solutions*
*Corporation*