# EXHIBIT I

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **IN RE CATTLE ANTITRUST LITIGATION** | Civil No. 19-cv-1222 (JRT/HB) |
| | Judge John R. Tunheim |
| *This Document relates to:* ALL CASES | |

**PLAINTIFFS' FIRST SET OF REQUESTS**
**TO ALL DEFENDANTS FOR THE PRODUCTION OF DOCUMENTS AND**
**ELECTRONICALLY STORED INFORMATION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs in this consolidated Class Action, Ranchers Cattlemen Action Legal Fund United Stockgrowers of America, Farmers Educational and Cooperative Union of America, Weinreis Brothers Partnership, Minatare Feedlot, Inc., Charles Weinreis, Eric Nelson, James Jensen d/b/a Lucky 7 Angus, Richard Chambers as trustee of the Richard C. Chambers Living Trust, Steven Graham, and Nathan Graham ("Plaintiffs"), on behalf of themselves and all others similarly situated, hereby request that Defendants respond to this First Set of Requests for Production of Documents and Electronically Stored Information and produce the documents and electronically stored information requested herein no later than 30 days after the commencement of discovery or other date ordered by the Court, at the offices of Robins Kaplan LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, or at such other mutually agreeable location. Corrections to, and supplemental responses of, the production of documents and electronically stored information are

1

required as provided for in the Federal Rules of Civil Procedure and the Court's April 14,

2020 Order (ECF No. 196).

## I.    DEFINITIONS

1.      The definitions and rules of construction set forth in Federal Rule of Civil

Procedure 34 are hereby incorporated and shall apply to Plaintiffs' First Set of Requests to

All Defendants for the Production of Documents and Electronically Stored Information

("Requests").

2.      All definitions and abbreviations in these Requests have the same meaning as

the definitions and abbreviations in Plaintiffs' Second Consolidated Amended Class Action

Complaint (ECF No. 125), unless otherwise stated herein.

3.      The following additional definitions and rules of construction shall apply:

    a.      The singular form of a word includes the plural and vice versa;

    b.      The present tense shall be construed to include the past tense and vice
            versa;

    c.      "And" and "or" shall be construed either disjunctively or
            conjunctively, whichever is appropriate to have the broadest reach;

    d.      "Any" means one or more, "Each" means each and every, and "All"
            means all and any;

    e.      "Concerning" means relating to, referring to, describing, evidencing
            or constituting;

   f.  "Including" means including but not limited to and including without limitation;

   g.  "Person" shall be interpreted in the broadest sense, and shall include any natural person or any business, legal, governmental, or nongovernmental entity, association, or organization;

   h.  The masculine, feminine, or neuter pronoun shall not exclude other genders; and

   i.  References to employees, officers, directors, or agents shall include both current and former employees, officers, directors, and agents.

4.  "You" or "Your" means the responding Defendant and any of its officers, directors, Employees, partners, parents, subsidiaries, affiliates, divisions, predecessors, successors, representatives, agents, attorneys, and assigns, and also includes any other entities or individuals acting or purporting to act on their behalf or at their direction.

5.  "Beef" means meat from Cattle, sold or purchased fresh or frozen, whether as boxed beef, ground beef, or as part of a further processed product.

6.  "Beef Sales Data" means documents and all relevant information fields associated with each sale of Beef You made, regardless of whether those purchases were completed or cancelled.  Beef Sales Data includes data sufficient to identify:

   a.  the terms of each sale, including:

     i.  date of sale;

      ii.     all pricing information concerning the sale, including any price formulas or indices utilized, shipping, tax, or similar charges, and the gross and net unit price for each item in the sale;

      iii.    contract type;

      iv.    agreed delivery period;

      v.     the quantity (and units of measure) for each sale;

      vi.    the currency in which the sale was billed and paid;

      vii.   any discounts, rebates, credits, freight allowances, returns, free goods, and/or services or any other pricing adjustment for each sale, with sufficient information to attribute these adjustments to individual sales;

b.     product description, including the grade, cut, product form, and/or type of Beef, and any brand or certification, product numbers, unique purchaser-specific identifier, any description of characteristics, and product descriptions for each such sale;

c.     whether the Beef in each such sale was fresh, frozen, or chilled;

d.     cattle type from which the Beef in each such sale was fabricated (*e.g.*, steer, heifer, cow, bull, or mixed);

e.     any unique number associated with the sale (*e.g.*, invoice number or purchase order number);

f.     the location(s) from which the Beef was fabricated and shipped for each such sale;

g.      the purchaser's name, phone number(s), address(es) (including any bill to and ship to address(es)), and/or email address(es) for each such sale;

h.      the date You shipped the Beef, the date You billed for the Beef, and the date the purchaser took delivery for each such sale;

i.      any record of Your profit from each such sale;

j.      indication of cancellations and returns, including indication of quantity cancelled or returned and method to link a cancellation or return with each such sale;

k.      the sum ultimately paid by the purchaser for each such sale, excluding the addition of any taxes or delivery charges, and the data points used to calculate that sum, including, for example, base price, rebates, discounts, credits;

l.      any Structured Database field summarizing terms of each such sale or agreements or contracts for customers or Producers; and

m.      any other data available in Your databases Concerning each such sale.

7.      "Cattle" means Fed Cattle and cull cows and bulls.

8.      "Cattle Business" means the procurement and fabrication of Cattle for the sale of Beef, and trading or hedging activities in the Cattle Futures market.

9.      "Cattle Futures" means live cattle futures and options on live cattle futures transacted on the CME or elsewhere and related derivative products tied to the price of fed cattle or live cattle futures.

5

10.    "Cattle Purchase Data" means documents and all relevant information fields associated with each of Your purchases of Cattle for slaughter in the United States, regardless of whether those purchases were completed or cancelled.  For the avoidance of doubt, this includes: (i) Cattle fed at feedlots owned or leased by You; (ii) Cattle imported from outside the United States; and (iii) Cattle fed at feedlots not owned or leased by You. Cattle Purchase Data includes data sufficient to identify:

    a.    the terms of each such purchase, including:

        i.    all pricing information concerning the transaction, including any pricing formula utilized and shipping, tax, or similar charges;

        ii.    contract type (*e.g.*, Cash, Forward, Formula, or Grid);

        iii.    the agreed delivery period;

        iv.    Cattle type (*e.g.*, steer, heifer, cow, bull, or mixed);

        v.    the quantity (and units of measure) for each transaction;

        vi.    the currency in which the transaction was billed and paid;

        vii.    any discounts, rebates, credits, freight allowances, returns, free goods, and/or services or any other pricing adjustment for each transaction, with sufficient information to attribute these adjustments to individual sales;

    b.    any unique number associated with each such purchase (*e.g.*, invoice number or purchase order number);

c.  the name and location of the feedlot from which the Cattle was purchased for each such purchase;

d.  the seller's name, phone number(s), address(es), email address(es) for each such purchase;

e.  the seller's marketing agent name and address(es) for each such purchase;

f.  the name and address of the slaughter plant to which the Cattle were delivered for each such purchase;

g.  the date of delivery to the slaughter plant for each such purchase;

h.  requests by either party for shipment postponement, including reasons given, for each such purchase;

i.  the sum ultimately paid to the seller in relation to the purchase before the addition of any taxes or delivery charges, and the data points used to calculate that sum, including, for example, base price, live weight, carcass weight, yield, quality grade, and eligibility for a certified program (*e.g.*, Certified Angus Beef), for each such purchase;

j.  the date on which payment for the Cattle was made for each such purchase;

k.  classification as heavyweight or lightweight for each such purchase;

l.  quality, including USDA grade and eligibility for a branded or certified program (*e.g.*, Certified Angus Beef), for each such purchase;

m.  dress percentage, yield, and yield grade for each such purchase;

7

n.    any record of Your profit from each such purchase;

o.    any Structured Database field summarizing terms of each such purchase or agreements or contracts for customers or Producers;

p.    indication of cancellations, including indication of quantity cancelled and method to link a cancellation for each such purchase; and

q.    any other data available in Your database concerning each such purchase.

11.    "Communications" includes every manner or means of disclosure, transfer, or exchange of information (in the form of facts, ideas, inquiries, or otherwise), whether orally, electronically, by document, telecopier, mail, personal delivery, or otherwise.

12.    "Document Custodian" refers to any of Your Employees and/or representatives who the parties agree, or the Court orders, shall have Documents in Your, the Employee's, and/or representative's possession, custody, or control collected and produced in this matter.

13.    "Employee" means, without limitation, current and former officers, directors, executives, managers, sales personnel, secretaries, clerical staff, messengers, or any other person paid directly or indirectly by You, whether on a regular, contract, or any other basis, during the Relevant Time Period.

14.    "ESI" or "electronically stored information" means information that is stored electronically, regardless of media or whether it is in the original format in which it was created.

15.     "ESI Protocol" means the Order Regarding Production of Electronically Stored Information and Paper Documents entered on April 14, 2020 (ECF No. 198), as amended or supplemented from time to time.

16.     "Order Data" means documents and all relevant information fields associated with each of Your transactions (*e.g.*, buy or sell) of Cattle Futures regardless of whether those orders were executed or cancelled.  Order Data includes but is not limited to data sufficient to identify:

      a.      the date and time the order was placed;

      b.      the message type (*e.g.*, order entry, order modification, and order cancelation);

      c.      the contract type (*e.g.*, live cattle future, live cattle option, spread);

      d.      order type (*e.g.*, offer, bid, outright, iceberg, hidden, visible, peg, market, limit);

      e.      the order position (*e.g.*, long/short, call/put);

      f.      the volume;

      g.      the contract month (*e.g.*, February, April, June, August, October, December) and year, as well as the expiration date if an option;

      h.      the livestock yard, name and address, specified for delivery;

      i.      the forward price if a future, as well as the premium and strike price if an option;

      j.      the person(s) that placed the order;

      k.      the person(s) that cancelled, closed out, or partially offset the order;

l.      whether the order was filled, cancelled, expired, closed out, or partially offset;

m.     account identifying information (*e.g.*, Tag50 ID);

n.     the date and time that the order was filled, cancelled, expired, closed out, partially offset, or otherwise removed;

o.     venue (*e.g.*, CME, other exchange, or venue);

p.     for block trades, the time the order was executed or traded and the time the order was reported to the exchange; and

q.     the entities involved in placing, processing, executing, or clearing the order, including, without limitations, the futures commission merchant, clearing firm, order placement agent, order execution broker, or introducing broker associated with the order, or who received commissions or fees from the order.

17.    "Price" or "pricing" means any actual, proposed, suggested, or recommended price, as well as price increases or decreases, price quotations or offers, price lists, price announcements, discounts, rebates, credit terms, and any changes or proposed changes in the above.

18.    "Producer" means any person engaged in the business of selling Fed Cattle to a Packer for slaughter, and any of its officers, directors, Employees, partners, parents, subsidiaries, affiliates, divisions, predecessors, successors, representatives, agents (including marketing cooperatives and custom feedlots engaged by that Producer to

feed/sell their Fed Cattle), attorneys, assigns, and any other entities or individuals acting or purporting to act on their behalf or at their direction.

19.     "Protective Order" means the Protective Order entered on April 14, 2020 (ECF No. 197) in this matter, as amended or supplemented from time to time.

20.     "Structured Data" or "Structured Database" refers to any electronic data that resides in a fixed field within a record or file, such as data stored in Oracle, SQL, or files that are in Columns/Rows or a fixed field with a predefined format.

21.     "Trade Association" means an association of business organizations that promotes the interests of Beef packers relating to Cattle, Cattle Futures, and/or Beef, and in which two or more Beef packers are members, including the National Cattlemen's Beef Association; the U.S. Meat Export Federation; the Global and U.S. Roundtables for Sustainable Beef; and the North American Meat Institute (and its predecessors).

22.     The use of any definition for the purposes of these requests shall not be deemed to constitute an agreement or acknowledgement on the part of Plaintiffs that such definition is accurate, meaningful, or appropriate for any other purpose in this action.

## II.     INSTRUCTIONS

1.     These instructions hereby incorporate the Protective Order and ESI Protocol, whose terms shall prevail in the event of a conflict between those orders and these instructions.

2.     These Requests are deemed to be continuing in accordance with Federal Rule of Civil Procedure 26(e).  You shall supplement Your responses within a reasonable time if You obtain or become aware of any further Documents responsive to these Requests.

3.     Unless otherwise indicated, the Documents requested include all Documents and data in Your possession, custody, or control.  Without limitation of the terms "possession, custody, or control," as used in the preceding sentence, a Document is in Your possession, custody, or control if You have actual possession or custody or the right or practical ability to obtain the Document or a copy thereof upon demand from one or more of Your representatives, advisors, attorneys, or any other person or public or private entity that has actual physical possession thereof.

4.     As the term "possession" relates to e-mail, the term includes, but is not limited to, email contained in Your electronic e-mail directories, including but not limited to: (a) "deleted" emails which have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (b) "sent" e-mails, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" e-mails, including all subdirectories irrespective of the title of such subdirectories.

5.     With respect to the Documents produced, You shall produce them as they are kept in the usual course of business, including producing any tabs, labels, or directories of files identifying the Documents.

6.     You must produce entire Documents including attachments, enclosures, cover letters, memoranda, and appendices.  Documents not otherwise responsive to the Requests are to be produced if such Documents are attached to, or enclosed with, any Document that is responsive. Examples of such Documents include email attachments, routing slips, transmittal memoranda or letters, comments, evaluations, or similar Documents.  In the case of email attachments, if either the email or any of its attachments

is responsive, produce the email and all of the corresponding attachments.  Documents attached to each other shall not be separated.

7.     A Document with handwritten, typewritten or other recorded notes, editing marks, etc., is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

8.     The term "original" includes the file copy or copies of any Document if there is no actual original copy.

9.     All Documents shall be produced in their native format where available.

10.    All data are to be produced in a spreadsheet or nonproprietary database format.  For data in trading systems or other proprietary databases, You should identify the system used to create, store, and/or maintain that data.  The data can be exported to a spreadsheet or delimited text files, using pipe ("|") delimiters, in a manner that preserves the precision of and relationships among the original data, and with a schema description containing column names and data types/sizes.

11.    All data are to be accompanied by documentation sufficient to understand the meaning of all fields in the data provided and the methods, models, and data used in their calculation.

12.    Pursuant to Federal Rule of Civil Procedure 26(b)(5), if any Document responsive to a Request below is withheld from production on the basis of any claim of privilege, You shall submit, in lieu of any such Document, a privilege log in accordance with the Protective Order.

13.     Pursuant to Federal Rule of Civil Procedure 34(b)(2)(C), if You object to any individual Request, You must state whether any responsive materials are being withheld on the basis of that objection, and You must specify the part of the Request to which You are objecting and produce all materials that are responsive to the remainder of the Request.

14.     In the event that You object to any Request on the ground that it is overbroad or unduly burdensome for any reason, respond to that Request as narrowed to the least extent necessary, in Your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which You have narrowed that Request for purposes of Your response and the factual basis for Your conclusion.  When a Document or ESI contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a Document or ESI, you must clearly indicate the portions as to which the privilege is claimed.  When a Document or ESI has been redacted, identify as to each such Document or ESI the reason for the redaction.  Any redaction must be clearly indicated on the face of the redacted Document or ESI.

15.     In the event that any Document responsive to any Request once was, but is no longer, in Your possession, custody, or control, or has been lost, destroyed, discarded, or otherwise disposed of, You are requested to identify such Document as completely as possible, including without limitation, the following information:

   a.     the nature of the Document;

b.   the person who prepared or authorized the Document and, if applicable, the person to whom the Document was sent; the date on which the Document was prepared or transmitted; and

c.   if possible, what has happened to the Document and where it or any copies of it may be located, or if the Document was lost or destroyed, the date on which the Document was lost or destroyed, and, if destroyed, the conditions of and the reasons for such destruction and the persons requesting and performing the destruction.

16.   Each Request shall be construed independently, and no Request shall be viewed as limiting the scope of any other Request.

17.   Each Document is to be produced along with all drafts, without abbreviation or redaction.

18.   If no Documents are responsive to a particular Request, You are to state that no responsive Documents exist.  If You object to the scope or breadth of any of these requests, You should identify, to the extent possible, those Documents that You will produce notwithstanding the objection.

19.   Unless a specific request indicates otherwise, each Request calls for production of Documents and data dated, prepared, or received during, or otherwise related to, the period from January 1, 2012, through the date of your response.  However, if a Document prepared before January 1, 2012, is necessary for a correct and/or complete understanding of any Document covered by the Request, such earlier Document shall be produced.  If any Document is undated, or the date of its preparation cannot be determined,

the Document shall be produced if otherwise responsive to the Request.  Plaintiffs will meet and confer with You regarding the appropriate custodians whose email accounts and other Documents should be searched in responding to these requests and whether any search terms or other culling parameters are appropriate.

## III.   REQUESTS

### A.   *Compliance Policies*

**REQUEST NO. 1:**

Documents and Communications sufficient to show Your compliance policies, whether implemented, adopted, used, or considered, concerning federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, commodities laws, CME rules, unfair competition laws, anti-bribery laws, and any similar laws or regulations; or policies concerning contacts and/or Communications with Your competitors.  This Request includes: (i) current and former versions of such compliance policies and procedures; (ii) presentations, seminars, programs, and memos Concerning such compliance policies and procedures; and (iii) statements signed by Your Employees working within Your Cattle Business that acknowledge receipt of or compliance with such policies and procedures.

### B.   *Transaction Data*

**REQUEST NO. 2:**

Transaction-level data for all of Your purchases, sales, trades, or any other transaction of or in Cattle, Beef, or Cattle Futures, including: all Cattle Purchase Data; all Beef Sales Data; all Order Data.  This Request relates to the period from January 1, 2009,

through the date of your response. Plaintiffs request this information in the most disaggregated form (meaning at the transactional level, not aggregated by month or quarter) in which it is kept, and Defendants should produce the data in a comma-delimited text file (*e.g.*, a file with a file extension of .csv or .txt). If You maintain separate or distinct sets of such data for internal purposes, or any other purpose, Plaintiffs' request is for each separate set of data.

## C.   *Regulatory Productions*

**REQUEST NO. 3:**

All Documents and Communications concerning Fed Cattle, Cattle Futures and/or Beef that You produced to or received from any regulatory body or government agency, including, the U.S. Department of Justice, U.S. Government Accountability Office, the USDA, U.S. Commodity Futures Trading Commission, CME, National Futures Association, U.S. Securities & Exchange Commission, U.S. Federal Trade Commission, Federal Bureau of Investigation, any state law enforcement agency official, or any committee or member of the United States Congress. This Request includes all: (i) Documents or Communications produced pursuant to grand jury subpoenas, civil investigative demand or any other request for production of documents or information (whether formal or informal); (ii) copies of any such requests; (iii) all responses, objections, stipulations, modifications, production logs, privilege logs, or other parameters Concerning Your production of Documents and/or Communications to any such government or regulatory agency, (iv) transcripts of any governmental or regulatory proceedings or

testimony; and (v) interrogatory answers, white papers, presentations, or other Documents or Communications produced to any such governmental or regulatory agency.

        **D.**     ***Communications with Competitors and Other Industry Participants***

**REQUEST NO. 4:**

All Communications or Documents Concerning Communications, agreements, or meetings between You and any Beef packer (including any other Defendant) concerning Your or another packer's Cattle Business, or the Cattle Business generally. Excluded from this request are any Documents or Communications in which Defendants' or third party Beef packers' veterinary Employees were the exclusive senders and recipients.

**REQUEST NO. 5:**

All Communications or Documents Concerning Communications between You and Producers Concerning Fed Cattle prices; Cattle Futures prices; Fed Cattle purchases; Fed Cattle deliveries; the basis on which You would, or would not, negotiate Fed Cattle purchases, including the application of the Queuing Convention or other similar rules or conventions; card drawing; Fed Cattle demand; Fed Cattle slaughter plant utilization and capacity; the Producer's Communications with another Packer; and Beef prices or demand. This request includes Communications with feedlots that You own.

**REQUEST NO. 6:**

All Communications or Documents Concerning Communications between You and third parties, including futures commission merchants and brokerage and clearing organizations, Concerning Your or another Defendants' Cattle Futures trading activity.

### E.    *Other Documents*

**REQUEST NO. 7:**

All Documents and Communications Concerning market or competitive intelligence relating to another Beef packer's Cattle Business.  Included in this Request are all Documents and Communications Concerning another Beef packer's Fed Cattle purchases and pricing decisions, slaughter plant utilization, Cattle Futures transactions, and Beef sales.

**REQUEST NO. 8:**

All Documents and Communications utilized, created, maintained or generally referred to by Your management or Employees responsible for Fed Cattle procurement for negotiating, pricing, or setting the terms and conditions for the purchase of Fed Cattle, including pricing policies or guidelines; pricing methods, pricing formulas, bidding or authorization policies, procedures, or conventions for Your Cattle buyers to negotiate Fed Cattle purchases, including any Communications Concerning bidding guidelines, techniques, conventions, timings or restrictions; Documents providing guidance or instructions to Your Cattle buyers about implementation of any such Policies, as well as the identification of all Employees involved in procuring Fed Cattle; and template and concluded contracts used by You to purchase Fed Cattle.

**REQUEST NO. 9:**

All Documents and Communications utilized, created, maintained or generally referred to by Your management or Employees responsible for Beef sales for quoting or pricing Beef, including sales and pricing policies or guidelines; pricing methods, pricing

formulas, bidding or authorization procedures for Your sales Employees to quote prices; including any Communications concerning sales guidelines, techniques, or restrictions; and Documents providing guidance to Your sales Employees about implementation of any such Policies, as well as the identification of all employees involved in selling Beef.

**REQUEST NO. 10:**

All Documents and Communications concerning your Cattle Futures transactions, your calculation of risk positions and risk limits, as well as the identification of all Employees involved in trading Cattle Futures.  Included in this request are all Documents utilized, created, maintained, or generally referred to by Your Employees concerning setting, implementing, and adjusting Your Cattle Futures trading strategies and Policies, including those related to hedging, risk management, and speculation; concerning tracking, matching, and offsetting Your Cattle Futures positions; and, concerning Your Cattle Futures orders placed, filled, cancelled, expired, closed out, and partially offset.

**REQUEST NO. 11:**

All Documents and Communications concerning the available inventory and supply of Cattle in the U.S. and Canada, including the location of that inventory and supply and the proportion of that inventory and supply which had been purchased by You or another Beef packer.  Included in this Request are Documents maintained or produced by You to record and estimate the inventory and supply of Cattle, changes in the inventory and supply of Cattle, and the perceived reasons for those changes.

**REQUEST NO. 12:**

All Documents and Communications concerning the operation and utilization of Your Cattle slaughter and fabrication plants and associated cold storage facilities. Included in this Request are all Documents and Communications concerning proposed, considered, or actual changes in plant utilization or capacity; any proposed, considered, or actual decision to close, sell, slow, or idle a plant; slaughter and processing costs, including labor, energy, equipment, and all other non-Cattle costs associated with the operation of the plant; and Structured Data sufficient to show for each U.S. slaughter plant, fabrication, cold storage facility, and distribution center You operate in the United States the categories of information listed below as they may apply:

      a.     date;

      b.     head of Cattle slaughtered on that date;

      c.     information regarding the type of Cattle slaughtered (*e.g.*, heifer, steer, cow, bull);

      d.     live and dressed weight of Cattle slaughtered;

      e.     head of Cattle fabricated;

      f.     volume of Beef produced, broken down by cut and product type;

      g.     capacity in terms of the head of Cattle that could be slaughtered per day or hour and in terms of the pounds of Beef that can be produced per day or hour; and

      h.     cold storage capacity and utilization, in terms of current stock of Beef stored, measured in pounds.

**REQUEST NO. 13:**

Documents and Communications concerning any studies, predictive analyses, reports, white papers, analytics, or other methods used by You concerning Your Cattle Business.  Included in this request are all Documents utilized or generally referred to by Your management or Employees to forecast, record, and analyze profits, revenues, and/or costs (whether actual, budgeted, or forecasted) of Your purchases of Fed Cattle and/or sales of Beef and/or transactions in Cattle Futures, and all Communications concerning those Documents.

**REQUEST NO. 14:**

Documents and Communications concerning any relationship between the pricing of, and supply and demand for, Fed Cattle, feeder cattle, cull cows and bulls, Cattle Futures, and Beef.  This Request includes Documents and Communications describing factors determining supply (such as weather, disease, regulations, and all other factors You have described or discussed) and factors determining demand (such as population, income, tastes, substitute products, regulations, and all other factors You have described or discussed).

**REQUEST NO. 15:**

Documents sufficient to identify any means of communication You used in Your Cattle Business.  This includes, but is not limited to, any means of electronic messaging, any messaging applications, or social media used for work purposes, or any proprietary messaging or communication systems You used during the Relevant Period.

**REQUEST NO. 16:**

All documents and communications concerning any Trade Association meetings, industry conferences, charity events, or other functions that were or may have been attended by any of Your Employees whose job function concerned Your Cattle Business, including: (a) meeting announcements; (b) agendas; (c) minutes; (d) notes; (e) invitee and attendee lists; (f) handouts; (g) reports; (h) statistical bulletins; (i) correspondence; and (j) Documents and Communications concerning Your participation in those meetings.

**REQUEST NO. 17:**

For each Document Custodian, all:

    a.    electronic and hard copy diaries, calendars, appointment books or notes, notebooks, or to-do lists;

    b.    contact information maintained in electronic or hard copy format, for any person who is or was an owner, Employee, consultant, officer, board member, representative, or agent of: (i) a Beef packer; (ii) a Producer; (iii) an industry or financial analyst; (iv) an Employee of a trade association; (v) future commission merchants or brokerage and clearing organizations; (vi) an Employee of a non-Defendant that provides financing to Beef packers;

    c.    trip and travel logs and records, expense reports, and entertainment reports, including any other supporting Documents;

    d.    bills, statements, records, and supporting Documents concerning local, long distance, and cellular telephone calls by such Document

Custodian, including calls made using telephones not paid for by You (such as home office, fax, and personal telephone numbers, personal cellphones, and temporary pay-as-you go cellphones) if such telephones were used for business purposes;

e.   Documents relating to membership in any Trade Association or industry group or attendance at any Trade Association, industry group meeting, or investor conference, including announcements, membership lists, presentations (including speaker notes), agendas, minutes, notes, attendance lists, and correspondence;

f.   a copy of the Document Custodian's most recently created resume or curriculum vitae (CV);

g.   copies of any transcripts or recordings of any testimony of the Document Custodian relating to Your or another packer's Cattle Business, such as testimony at a deposition, trial, or public hearing;

h.   Documents sufficient to show the Document Custodian's complete contact information, including all phone numbers, social media user names or "handles," and email addresses used by such persons for any business purposes, even if only sparingly; and

i.   Any severance agreements in connection with the Document Custodian ceasing employment or changing employment status with You (without time limitation).

**REQUEST NO. 18:**

For each database You used to produce Structured Data, Documents, or other information in response to these Requests, as well as any other database that You use to store data or Structured Data concerning Your Cattle Business:

   a.   documents sufficient to show the reports and the reporting capabilities of each database – whether pre-configured or configured on an ad-hoc basis, and whether created on a regular or ad-hoc basis;

   b.   all data maps, data dictionaries, and document retention policies related to the database;

   c.   exemplars of each type of report generated in the ordinary course of business from each database through an automated task or process, and the frequency with which such reports are generated (*e.g*., daily, weekly, monthly, quarterly, or annually);

   d.   exemplars of all tables and/or files in each database; and

   e.   exemplars of all fields for the tables and/or files identified in the immediately preceding request, and the descriptions and/or definitions for these fields.

**REQUEST NO. 19:**

All Documents and Communications concerning Plaintiffs.

**REQUEST NO. 20:**

All Documents and discovery requests or responses provided to plaintiffs, received from plaintiffs, or provided to or received from third parties in actions related to this claim,

including *Peterson v. JBS USA Food Company Holdings et al*, No. 19-cv-01129 (D. Minn.).

Dated:  June 19, 2020

**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**

*Christopher M Burke* with permission KSJ
Christopher M. Burke (*pro hac vice*)
600 W. Broadway, Suite 3300
San Diego, CA  92101
Tel.:   619-233-4565
Fax:    619-233-0508
cburke@scott-scott.com

David R. Scott (*pro hac vice*)
Amanda F. Lawrence (*pro hac vice*)
Patrick J. McGahan (*pro hac vice*)
Michael P. Srodoski
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Tel.:  860-537-5537
Fax:  860-537-4432
david.scott@scott-scott.com
alawrence@scott-scott.com
msrodoski@scott-scott.com

Peter A. Barile III (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue
17th Floor
New York, NY  10169
Tel.:   212-223-6444
Fax:    212-223-6334
pbarile@scott-scott.com

Anthony F. Fata (*pro hac vice*)
Jennifer W. Sprengel (*pro hac vice*)

26

Christopher P.T. Tourek (*pro hac vice*)
Brian P. O'Connell (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
150 S. Wacker
Suite 3000
Chicago, IL 60606
Tel.:   312-782-4882
Fax:   312-782-4485
afata@caffertyclobes.com
ctourek@caffertyclobes.com
boconnell@caffertyclobes.com

Ellen Meriwether (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
 205 N. Monroe St.
Media, PA 19063
Tel.:   215-864-2800
Fax:   215-864-2810
emeriwether@caffertyclobes.com

*Interim Co-Lead Counsel for the Cattle Plaintiffs*


K. Craig Wildfang (Bar No. 0117043)
Thomas J. Undlin (Bar No. 0183751)
Stacey P. Slaughter (Bar No. 0296971)
**ROBINS KAPLAN LLP**
800 LaSalle Avenue
Suite 2800
Minneapolis, MN  55402
Tel:   612-349-8500
Fax:   612-339-4181
kcwildfang@robinskaplan.com
tundlin@robinskaplan.com
sslaughter@robinskaplan.com

Hollis Salzman
Kellie Lerner
**ROBINS KAPLAN LLP**
 399 Park Avenue

27

Suite 3600
New York, NY  10022
Tel:    212-980-7400
Fax:    212-980-7499
hsalzman@robinskaplan.com
klerner@robinskaplan.com

*Liaison Counsel for the Cattle Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2020, a true and correct copy of the foregoing PLAINTIFFS' FIRST SET OF REQUESTS TO ALL DEFENDANTS FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION was served by email on Defendants' counsel of record.

Lewis A. Remele, Jr., Reg. No. 90724
Christopher R. Morris, Reg. No. 230613
**BASSFORD REMELE, PA**
100 South 5th Street, Suite 1500
Minneapolis, MN 55402
(612) 333-3000
lremele@bassford.com
cmorris@bassford.com

William F. Hargens
Mark F. Enenbach
Patrick E. Brookhouser, Jr.
Matthew G. Munro
**MCGRATH NORTH MULLIN & KRATZ, PC LLO**
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE 68102
(402) 341-3070
whargens@mcgrathnorth.com
menenbach@mcgrathnorth.com
pbrookhouser@mcgrathnorth.com
mmunro@mcgrathnorth.com
*Admitted Pro Hac Vice*

*Counsel for Defendants JBS USA Food Company, JBS Packerland, Inc. and Swift Beef Company, and Special Appearance for Defendant JBS S.A.*

Kathryn N. Hibbard, Reg. No. 0387155

David P. Graham, Reg. No. 0185462
**DYKEMA GOSSETT, PLLC**
4000 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

Jon B. Jacobs
Jeremy C. Keeney
**PERKINS COIE LLP**
700 13th Street, NW, Suite 600
Washington, DC 20005
(202) 654-1758
jbjacobs@perkinscoie.com
jkeeney@perkinscoie.com
*Admitted Pro Hac Vice*

Susan E. Foster
Ulrike B. Connelly
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
(206) 359-8846
sfoster@perkinscoie.com
uconnelly@perkinscoie.com
*Admitted Pro Hac Vice*

*Counsel for Defendants Tyson Foods, Inc. and Tyson Fresh Meats, Inc.*

Andrew M. Luger, Reg. No. 0189261

29

X. Kevin Zhao, Reg. No. 0391302
**GREENE ESPEL PLLP**
222 South 9th Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
khibbard@greeneespel.com
kzhao@greeneespel.com

Mark W. Ryan
Michael E. Lackey, Jr.
Nicole A. Saharsky
**MAYER BROWN LLP**
1999 K Street, NW
Washington, DC 20009
(202) 263-3338
mryan@mayerbrown.com
mlackey@mayerbrown.com
nsaharsky@mayerbrown.com
*Admitted Pro Hac Vice*

*Counsel for Defendants Cargill,*
*Incorporated and Cargill Meat Solutions*
*Corporation*

Benjamin L. Ellison, Reg. No. 0392777
**JONES DAY**
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
(612) 217-8862
aluger@jonesday.com
bellison@jonesday.com

Julia E. McEvoy
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
(202) 879-3867
jmcevoy@jonesday.com
*Admitted Pro Hac Vice*

Paula W. Render
**JONES DAY**
77 West Wacker, Suite 3500
Chicago, Illinois 60601-1692
(312) 269-1555
prender@jonesday.com
*Admitted Pro Hac Vice*

*Counsel for Defendant National Beef*
*Packing Company, LLC*

*Christopher M Burke* with permission KSJ
Christopher M. Burke