# EXHIBIT J

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| KENNETH PETERSON, et al.<br><br>                        Plaintiffs,<br><br>    v.<br><br>JBS USA FOOD COMPANY HOLDINGS, TYSON FOODS, INC., CARGILL, INC., and NATIONAL BEEF PACKING COMPANY,<br><br>                        Defendants. | Case No. 0:19-cv-01129-JRT-HB<br><br>**CONSUMER INDIRECT PURCHASER PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS** |

Pursuant to Federal Rules of Civil Procedure 26 and 34, the Peterson Plaintiffs ("Plaintiffs") hereby request that Defendants JBS USA Food Company Holdings, Tyson Foods, Inc., Cargill, Inc., and National Beef Packing Company produce the documents and things herein requested within 30 days at the offices of Lockridge Grindal Nauen PLLP, 100 S Washington Ave # 2200, Minneapolis, MN 55401, or such other time and place as may be agreed upon by counsel. Pursuant to Rule 34(b), unless otherwise specified, all documents must be organized and labeled to correspond to the categories in the associated document request. Corrections and supplemental answers and production of documents are required as provided for in the Federal Rules of Civil Procedure.

## I.    <u>DEFINITIONS</u>

1.    "Beef" means meat from Cattle, cull cows and cull bulls that is sold or purchased fresh or frozen, whether as boxed beef, ground beef or as part of a further processed product

2.       "Beef Processor" means Defendants and any non-Defendant entity that, buys, slaughters, and processes Cattle to make Beef that is sold in the U.S. market.

3.       "Beef Supply Factors" refers to the ways in which Defendants control the supply of Beef, including capacity reductions, controlling slaughter rates, and exports.

4.       "Cattle" means heifers or steers specifically raised for the production of beef, regardless of breed.

5.       "Communication" means, without limitation, the imparting or exchange of information, thoughts or opinions by any means including orally, in writing, by signs, signals or code, including oral, written or electronic communications, such as face-to-face meetings, electronic communications, emails, facsimiles, telephone communications, correspondence or other exchange of written or recorded information. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

6.       "Competitive Conditions" means costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares of Beef or Cattle.

7.       "Complaint" means Consumer Indirect Purchaser Plaintiffs' Amended Class Action Complaint (ECF No. 53).

8.       "Creditor Conference" means a conference or event relating to Beef that is organized or hosted by a company that provides credit or loan financing for Beef Processors.

9.       "Creditor Representative" means an employee of a non-Defendant that provides credit or loan financing to a Beef Processor for its Beef-related business.

10.    "Defendant" means any former or current defendant in the present case, including Defendants JBS USA Food Company Holdings, Tyson Foods, Inc., Cargill, Inc., and National Beef Packing Company, including any predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity that the responding Defendant manages or controls.

11.    "Document" has the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense means papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage

media used in data processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

12.    "Document Custodian" refers to Your employees and/or representatives who the parties agree, or the Court orders, must have Documents in Your, the employee's, and/or Representative's possession, custody, or control collected and produced in this matter.

13.    "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (SnapChat, Confide, Signal, etc.));
- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange .EDB);
- Word processed documents (e.g., MS Word or WordPerfect files and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Unstructured Data;
- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;
- Project Management Application Data;
- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content); and
- Cloud based or other virtualized ESI, including application, infrastructure and data.

14. "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

15. "Identity" or "identify" means:

   a. when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

   b. when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

16.    "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way. Including therefore means "including, but not limited to," or "including without limitation."

17.    "Industry Analyst" means a Person, other than an employee of a Defendant, a Defendant's parent, a Defendant's subsidiary, or another Beef Processor, who analyzes Beef Processors for the purpose or with the effect of advising clients on investment in Beef Processors.

18.    "Industry Meeting" means a meeting for companies in the Cattle or Beef industry and at which the Cattle or Beef industry is discussed, organized or hosted by an entity other than a named Defendant, a Defendant's parent, a Defendant's subsidiary, or another Beef Processor, and attended by two or more Beef Processor, including at least one named Defendant.

19.    "Management" shall be construed broadly and means without limitation, Employees or other Persons with executive, management, supervisory or policy-setting responsibilities, both individually and collectively, and, depending upon context, includes their administrative assistants, secretaries, or other support staff.

20.    "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video, or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

21.    "Named Plaintiffs" means those individuals or entities listed as plaintiffs in the Complaint, and any entities subsequently added as named plaintiffs in this matter.

22.     "Or" and "and" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

23.     "Person" means, without limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state or any foreign country.

24.     "Policy" or "Procedure" means any rule, practice or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

25.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly or indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

26.     "Representative" shall mean any and all agents, employees, servants, independent contractors, consultants, officers, directors, associates, or other persons acting or purporting to act on Your behalf or on behalf of the person in question.

27.     "Sales Personnel" shall be construed broadly and means, without limitation, any Employees or other Persons that had responsibility, directly or indirectly, relating to sales to customers of Beef sold in the U.S. (including any role or responsibility for selling, determining or establishing pricing, effectuating, or establishing terms and conditions of sales or purchases).

28.     "Structured Data" or "Structured Database" refers to any electronic data that resides in a fixed field within a record or file, such as data stored in Oracle, SQL, or files that are in Columns/Rows or a fixed field with a predefined format.

29.     "Studies" or "analyses" include all reports, memoranda, statistical compilations, reviews, audits and other types of written, printed, or electronic submissions of information.

30.     "Telephone Record" means any record of the originating and terminating phone numbers for a particular phone call or facsimile transmission, such as the monthly bill that telephone carriers such as AT&T, CenturyLink, and numerous other telephone carriers provide on a monthly basis.

31.     "Trade Association" means an association of business organizations that promotes the interests of Beef Processors relating to Beef and in which two or more Beef Processors are members, including the North American Meat Institute, American Meat Institute, American Meat Institute Foundation, The North American Meat Association, Global and U.S. Roundtables for Sustainable Beef, National Cattlemen's Beef Association, U.S. Meat Export Federation, Federation of State Beef Councils, and Cattlemen's Beef Promotion And Research Board.

32.     "United States" or "U.S." means each of the 50 states, the District of Columbia, and the commonwealths, territories, and possessions of the United States.

33.     "Unstructured Data" is data that does not conform to a specific, pre-defined data model, it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but not are limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

34.     "You," "Your" or "Your company" mean the responding Defendant, including its predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity that the responding Defendant manages or controls, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives or any persons acting or purporting to act on their behalf.

35.     All other words have their plain and ordinary meaning.

## II.     SPECIFIC DOCUMENT REQUESTS

The "Relevant Time Period" for these requests is January 1, 2012, through the present, unless otherwise noted.  Plaintiffs will meet and confer with You regarding the appropriate custodians whose email accounts and other Documents should be searched in responding to these requests and whether any search terms or other culling parameters are appropriate.

**DOCUMENT REQUEST NO. 1:**

All Documents or Communications relating to reduction of the capacity to slaughter, process, store, or distribute Cattle or Beef, including, but not limited to, the closure of facilities involved in the slaughter, processing and packing of Cattle or Beef or Your decisions to reduce or restrict increases in the capacity of Your facilities to slaughter or process Cattle.

**DOCUMENT REQUEST NO. 2:**

All Documents or Communications between Defendants relating to allocation of the markets for Cattle or Beef, the prices of Cattle or Beef bought or sold within them, bid rigging or other agreements related to procurement events, including All Documents or Communications relating to Your decision to stop or otherwise limit your purchases or slaughter of Cattle, either regionally or nationally.

**DOCUMENT REQUEST NO. 3:**

All Documents relating to competition in the Cattle or Beef industries produced to the Department of Justice, Federal Trade Commission, U.S. Department of Agriculture, U.S. Securities & Exchange Commission, states' attorneys general, or other government agencies or regulators voluntarily or pursuant to any civil investigative demand, grand jury subpoena, or other investigative request.

**DOCUMENT REQUEST NO. 4:**

Copies of all Telephone Records in your possession, custody, or control, including Telephone Records of your main phone number(s), main fax number(s), and any phone number used as a switchboard for any of your relevant facilities such as your headquarters, administrative offices, Cattle Farms, Beef Processing Facilities, and Beef sales offices.

**DOCUMENT REQUEST NO. 5:**

All Documents relating to budgets, projections, estimates, or related Studies, presentations, or reports regarding Cattle or Beef regularly prepared or received by Your current or former directors, officers, or Management on a regular basis (weekly, monthly, quarterly, or annually) regarding the following topics:

a.  cost and/or cost accounting reports (including, production, sale and distribution);

b.  audited or unaudited financial statements (including all appendices);

c.  cost and supply of raw material and/or inputs, including any back-integration of raw materials, swaps or sales of raw materials with other Cattle or Beef Processors, or hedging of purchased raw materials and/or inputs for Cattle or Beef;

d.  distribution channels for Cattle or Beef;

e.  export markets for Cattle or Beef including a breakdown of country of destination and product form;

f.  Cattle or Beef product information regarding the types and product forms of Cattle or Beef sold by You;

g.  forecasted, projected, estimated, planned, or actual demand for Cattle or Beef;

h.  demand changes or demand fluctuations for Cattle or Beef sold in the U.S.; and

i.      profits, revenues, and loss information on Cattle or Beef produced or sold in the U.S. identified on a (i) consolidated basis; (ii) product line or product category basis; and/or (iii) facility-by-facility basis (including, but not limited to, gross profits, operating profits, net profits, cash flow reports, and EBITDA).

## DOCUMENT REQUEST NO. 6:

All Documents utilized or generally referred to by Your Management or Sales Personnel for quoting, changing, or setting the prices or the terms and conditions for sale of Cattle or Beef, including pricing guidelines, pricing methods, pricing formulas, procedures or authorization procedures for Sales Personnel to quote a price, price changes, price lists, pricing policies, violations of pricing policies and Documents providing guidance to Sales Personnel about implementation of price changes.

## DOCUMENT REQUEST NO. 7:

All Documents relating to or communicating Cattle or Beef price announcements, price changes, explanations of the reasons for price changes, price lists, pricing policies, pricing guidelines, pricing methods, pricing formulas, analysis of market prices, monitoring of competitor pricing, price changes of Cattle or Beef slaughtered, fabricated or sold in the U.S. (including price announcements or explanations of the reasons for price changes), price increase and surcharge announcements, changes in the pricing terms for Your customers' contracts for Cattle or Beef, including any Analyses regarding changes from fixed-price to adjustable price provisions, and any other Communications concerning Beef price increases or the imposition of surcharges.

**DOCUMENT REQUEST NO. 8:**

All Documents relating to Competitive Conditions in the markets for Cattle or Beef, including reports, presentations, industry publications, business plans, Studies, Analyses, or other Documents concerning: (i) market shares; (ii) consolidation, mergers, acquisitions, or joint ventures; (iii) production or processing capacity, capacity reduction, capacity utilization, or operating rates; (iv) fixed or variable costs; (v) pricing; (vi) inventories; (vii) entry or exit conditions; (viii) inventories; (ix) supplies/supply trends; (x) data, publications, or other sources used in the regular course of business by You to monitor Beef demand in the United States; (xi) substitute products; (xii) exports; (xiii) raw materials; (xiv) Beef Supply Factors; (xv) prices of Cattle or Beef at each level of distribution, including the extent that costs were passed on; (xvi) effect of changes in the supply of Cattle or Beef on the price of Beef at each distribution level; (xvii) other industry statistics; and (xviii) communications with investors, Industry Analysts, benchmarking services, and/or Creditor Representatives.

**DOCUMENT REQUEST NO. 9:**

All Documents concerning Cattle or Beef slaughter reduction/restraint or supply rationalization, industry leadership, industry discipline, production discipline, supply discipline, capacity discipline, or other so-called disciplined approaches or practices relating to the Cattle or Beef industries.

**DOCUMENT REQUEST NO. 10:**

Documents relating to actions to conceal or avoid detection of any potential violations of federal, state, or international antitrust laws, competition laws, anti- monopoly

laws, anti-cartel laws, unfair competition laws, anti-bribery laws and any similar laws, rules or regulations (including the use of code words or otherwise masking the identity of any Person or entity, meeting in locations or communicating at times or via methods with the intent to avoid detection by any Person or entity, using non-traceable prepaid calling cards or cellphones, non-contract or disposable cell phones, placing calls from public phones, and destroying, secreting, altering or forging Documents).

**DOCUMENT REQUEST NO. 11:**

All Documents sufficient to show Your corporate organizational structure throughout the Relevant Time Period, including, but not limited to, departments, divisions, parents, subsidiaries, joint ventures, affiliates, units or other subdivisions that had any role at any time during the Relevant Time Period in the production, processing, distribution, marketing, pricing or sale of Cattle or Beef.

**DOCUMENT REQUEST NO. 12:**

Documents sufficient to describe in detail the Beef products You sold, marketed, or distributed from January 1, 2009 through the present, including any variations relating to brand name, physical properties and characteristics, packaging, product form, cut, further processing, grade, specialty products and any other factors influencing price, including Documents sufficient to show why and how You labeled, marked, and/or branded Your Beef during the Relevant Time Period, for purposes of product tracking, quality, safety, and/or regulatory compliance.

## DOCUMENT REQUEST NO. 13:

Structured Data regarding the terms of all purchases, sales, trades, exchanges, or swaps of Cattle or Beef between You and any other Beef Processor, including any contracts, co-packing agreements, joint ventures, and/or other agreements, whether formal or informal.

## DOCUMENT REQUEST NO. 14:

For the time period from January 1, 2009 through the present, Structured Data sufficient to show, for each U.S. Cattle purchase or Beef sale, the categories of information listed below, and Documents sufficient to understand all data fields, codes, or other fields on the invoice. Plaintiffs request this information in the most disaggregated form (meaning at the transactional level, not aggregated by month or quarter) in which it is kept, and Defendants should produce the data in a comma-delimited text file (*e.g.*, a file with a file extension of .csv or .txt). If You maintain separate or distinct sets of such data for internal purposes, Agri Stats reporting purposes, or any other purpose, Plaintiffs' request is for each separate set of data for the categories of information listed below.

a.     the terms of each sale;

b.     the invoice number;

c.     the purchase order number;

d.     the location from which the Cattle or Beef was shipped;

e.     the customer's name, phone number(s), address(es), email address(es), including the identity of the customer that was billed and the location to which the Beef was shipped;

f.     the date You shipped the Cattle or Beef, the date You billed for the Beef, and the date the customer took delivery;

g.    the grade, cut, product form, and/or type of Cattle or Beef, including any product numbers, unique purchaser-specific identifier, any description of characteristics, and product descriptions sold for each transaction;

h.    the quantity (and units of measure) for each sale;

i.    all pricing information concerning the sale, including shipping, tax, or similar charges, and the gross and n    et unit price for each item in the sale;

j.    the currency in which the sale was billed and paid;

k.    any discounts, rebates, credits, freight allowances, returns, free goods, and/or services or any other pricing adjustment for each sale, with sufficient information to attribute these adjustments to individual sales;

l.    if a resale, the Supplier of the Cattle or Beef sold in connection with each sale;

m.    the price You paid Your Supplier for each type of Cattle or Beef sold in connection with each sale, including gross and net aggregate and per-unit prices;

n.    any fixed or variable costs or costs of goods sold concerning the sale (including freight charge and transportation cost, sales and distribution cost, raw materials, intermediates, marketing or sales cost, and any other cost attributed or allocated to the sale);

o.    for any sale or purchase from another Cattle company or Beef Processor, Electronic Data Interchange fields for which the user can freely enter text, such as "comments" or similar fields;

p.    any Structured Database field summarizing terms of sale or agreements or contracts for customers;

q.    any other data available in Your database Concerning the purchase, sale or distribution of the Cattle or Beef for each sale.

r.    Structured Data of any marketing funds or rebate payments made to downstream purchasers of Cattle or Beef, including:

1.    Date of payment;
2.    Period over which payment applies;

3.      Name and description of program (e.g., volume rebate or discounts);

4.      Payment amount;

5.      Information pertaining to which customer the rebate applied to;

6.      Total purchase dollars and volume of Beef on which basis the rebate is paid.

## DOCUMENT REQUEST NO. 15:

For the time period from January 1, 2009 through the present, any Structured data relating to downstream sales by Your direct purchaser or other downstream purchasers, including:

a.      the terms of each sale;

b.      the invoice number;

c.      the purchase order number;

d.      the location from which the Beef was shipped;

e.      the customer's name, phone number(s), address(es), email address(es), including the identity of the customer that was billed and the location to which the Beef was shipped;

f.      the date You shipped the Beef, the date You billed for the Beef, and the date the customer took delivery;

g.      the grade, cut, product form, and/or type of Beef, including any product numbers, unique purchaser-specific identifier, any description of characteristics, and product descriptions sold for each transaction;

h.      the quantity (and units of measure) for each sale;

i.      all pricing information concerning the sale, including shipping, tax, or similar charges, and the gross and net unit price for each item in the sale;

j.      the currency in which the sale was billed and paid;

k.      any discounts, rebates, credits, freight allowances, returns, free goods, and/or services or any other pricing adjustment for each sale, with

sufficient information to attribute these adjustments to individual sales;

l.      if a resale, the Supplier of each Cattle or Beef sold in connection with each sale;

m.     the price You paid Your Supplier for each type of Cattle or Beef sold in connection with each sale, including gross and net aggregate and per-unit prices;

n.      any fixed or variable costs or costs of goods sold concerning the sale (including freight charge and transportation cost, sales and distribution cost, raw materials, intermediates, marketing or sales cost, and any other cost attributed or allocated to the sale);

o.      for any sale or purchase from another Beef Processor, Electronic Data Interchange fields for which the user can freely enter text, such as "comments" or similar fields;

p.      any Structured Database field summarizing terms of sale or agreements or contracts for customers;

q.      any other data available in Your database Concerning the purchase, sale or distribution of the Cattle or Beef for each sale.

## DOCUMENT REQUEST NO. 16:

All Documents and discovery requests or responses provided to plaintiffs, received from plaintiffs, or provided to or received from third parties in actions related to this claim, including the *In re Cattle Antitrust Litigation*, No. 19-cv-01222 (D. Minn.).

## DOCUMENT REQUEST NO. 17:

All Documents concerning the costs of and potential obstacles to entering the Cattle or Beef markets, including, but not limited to, capital costs, environmental regulations, production costs, marketing costs and difficulties, contractual supply relationships, market conditions, brand loyalty or differentiation, start-up costs, and any other difficulties or obstacles to entry into the market for producing and selling Cattle or Beef.

**DOCUMENT REQUEST NO. 18:**

Documents sufficient to show actual or potential substitutes for Beef, or the elasticity of supply, demand, or price of Beef, analyzed by You during the Class Period (including the effect of such substitutes' prices upon Beef pricing, purchase terms, or profits).

**DOCUMENT REQUEST NO. 19:**

All Documents, summaries, reports, data or point of sale information concerning the pricing of Beef provided by direct purchasers or other downstream purchasers of Beef to You for the Relevant Period.

**DOCUMENT REQUEST NO. 20:**

All contracts, and any summaries of the terms (including duration, price protection, terms for price modification, surcharges, discounts, or rebates) for either your purchase or sale of Cattle, Cattle carcasses, or Beef in the U.S., including with your Cattle suppliers or third-party agents, including commercial feedlots and marketing cooperatives, who conducted marketing negotiations on their behalf and with your customers.

Dated:  June 19, 2020                    Respectfully submitted,

                                          s/ Brian D. Clark
                                          W. Joseph Bruckner (MN #0147758)
                                          Brian D. Clark (MN #0390069)
                                          Arielle S. Wagner (MN #0398332)
                                          Stephanie A. Chen (MN #0400032)
                                          LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                          100 Washington Avenue South, Suite 2200
                                          Minneapolis, MN 55401
                                          T:  (612) 339-6900
                                          F:  (612) 339-0981
                                          wjbruckner@locklaw.com
                                          bdclark@locklaw.com
                                          aswagner@locklaw.com
                                          sachen@locklaw.com


                                          s/ Steve W. Berman
                                          Steve W. Berman (*Pro Hac Vice*)
                                          Breanna Van Engelen (*Pro Hac Vice*)
                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                          1301 Second Avenue, Suite 2000
                                          Seattle, Washington 98101
                                          Telephone: (206) 623-7292
                                          Facsimile: (206) 623-0594
                                          steve@hbsslaw.com
                                          breannav@hbsslaw.com

                                          Shana E. Scarlett (*Pro Hac Vice*)
                                          Rio S. Pierce (*Pro Hac Vice*)
                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                          715 Hearst Avenue, Suite 202
                                          Berkeley, California 94710
                                          Telephone: (510) 725-3000
                                          Facsimile: (510) 725-3001
                                          shanas@hbsslaw.com
                                          riop@hbsslaw.com

                                          *Interim Co-Lead Class Counsel for Consumer
                                          Indirect Purchaser Plaintiffs*

## DECLARATION OF SERVICE BY E-MAIL

I, the undersigned, declare:

That declarant is and was, at all times herein mentioned, a resident of the United States and employed in the City of Minneapolis, in the County of Hennepin, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 100 Washington Avenue South, Suite 2200, Minneapolis, Minnesota 55401.

That on June 19, 2020, I served by e-mail, CONSUMER INDIRECT PURCHASER PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS to the parties listed on the attached Service List.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 19th day of June 2020, at Minneapolis, Minnesota.

/s Brian D. Clark
_____
Brian D. Clark
