# EXHIBIT K

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE DPP BEEF LITIGATION | Case No. 0:20-cv-01319-JRT-HB |
| This document applies to: ALL CASES | **DIRECT PURCHASER PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS** |

Pursuant to Federal Rules of Civil Procedure ("Rules") 26 and 34, Direct Purchaser Plaintiffs ("Plaintiffs") hereby request that each Defendant produce the documents and things herein requested within 30 days of the date of service at the offices of Cotchett, Pitre & McCarthy, LLP, 840 Malcolm Road, Burlingame, California 94010, or such other time and place as may be agreed upon by counsel. Pursuant to Rule 34(b), unless otherwise specified, all documents must be organized and labeled to correspond to the categories in the associated document request. Corrections and supplemental answers and production of documents are required as provided for in the Rules.

## DEFINITIONS

The following definitions shall apply to these document requests:

1. "And" and "or" are to be read interchangeably to give the broadest possible meaning to a particular request in which either or both is used.

1

2.     "Beef" means boxed and case-ready meat that has been processed from fed cattle by Defendants (defined below) and other smaller, non-defendant producers.

3.     "Beef Supply Factors" refers to any data, calculation, or other information relating to the supply of Beef in the United States (defined below) and any similar data You (defined below) maintain from which Your own or Beef industry supply information can be assessed or determined.

4.     "Communication" means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including, but not limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes, publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party, but the other party does not necessarily respond.

5.     "Competitive Conditions," in addition to its ordinary meaning and usage, includes actual or forecasted, projected or estimated conditions or trends relating to pricing, Beef Supply Factors, number of fed cattle slaughtered, Beef available for purchase by customers, production (including output, capacity, capacity utilization, operating rates, facility closures, rationalization, supply or

capacity discipline, production or downtime, and/or production scheduling), inventories, demand, sales, profitability or margins, market share (including mergers, acquisitions, joint ventures, divestitures, sales or transfers of assets, spin-offs, or any other form of change of ownership or control or consolidation), competitors, fixed or variable costs, and imports or exports in the market for Beef.

6.     "Complaint" means Direct Purchaser Plaintiffs' Second Consolidated Amended Class Action Complaint (ECF Nos. 256 (sealed), 257 (redacted)).

7.     "Corporate Communications" means, without limitation, communications by the responding parties' corporate officers or employees responsible, in whole or in part, for its external communications or messaging (*i.e.*, to media, financial community, customer base, government, industry bodies and institutes, and general public), including, but not limited to, public relations, investor or creditor relations, government relations, or similar functions or activities.

8.     "Defendant" means any company, organization, entity, or person presently or subsequently named as a Defendant in this litigation, including its predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former

directors, officers, employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant.

9.      "Document" shall have the same meaning as used in Rule 34, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense includes papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

10.    "Document Custodian" refers to Your current and/or former Employees (defined below) and/or current or former Representatives (defined below) who the parties agree, or the Court orders, must have Documents in Your, the Employee's, and/or Representative's possession, custody, or control collected and produced in this matter.

11.    "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (*e.g.*, e-mail, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snapchat, Confide, Signal, etc.));
- E-Mail Server Stores (*e.g.*, Lotus Domino .NSF or Microsoft Exchange .EDB);
- Word processed documents (*e.g.*, MS Word or WordPerfect files and drafts);
- Spreadsheets and tables (*e.g.*, Excel or Lotus 123 worksheets);
- Accounting Application Data (*e.g.*, QuickBooks, Money, Peachtree data);
- Image and Facsimile Files (*e.g.*, .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (*e.g.*, .WAV and .MP3 files);
- Video and Animation (*e.g.*, .AVI and .MOV files);
- Unstructured Data;
- Structured Databases (*e.g.*, Excel, Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (*e.g.*, Outlook, ACT!);
- Calendar and Diary Application Data (*e.g.*, Outlook PST, blog entries);
- Online Access Data (*e.g.*, Temporary Internet Files, History, Cookies);
- Presentations (*e.g.*, PowerPoint, Corel Presentations);
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Backup and Archival Files (*e.g.*, Veritas, Zip, .GHO, iTunes archives of iPhone content); and

- Cloud-based or other virtualized ESI, including application, infrastructure and data.

12.  "Employee" means, without limitation, any Person (defined below) that You employ or employed, including, but not limited to, all past and present directors, officers, executives, attorneys, accountants, independent contractors, contact persons, advisors, and consultants.

13.  "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way. Including therefore means "including, but not limited to," or "including without limitation."

14.  "Industry Analyst" means a Person or entity who analyzes Competitive Conditions in the Beef industry for the purpose or with the effect of advising on investment in or providing financing to Defendants, such as Persons who work for entities who host Investor Conferences.

15.  "Industry Meeting" means, without limitation, any meeting, directly or indirectly relating to the market for Beef, conferences hosted by any association created under the Export Trading Company Act (15 U.S.C. §§ 4001-21), Trade Association (or other industry or similar organizations) or other entities or persons, whether formal, informal, or ad hoc, involving two or more Defendants, and includes any formal or informal committee or other sub-unit.

16.  "Investor Conference" means any meeting, webinar, telephone conference, or event involving one or more Defendants, organized or hosted by an

6

entity that either invests its own money or advises others who have an ownership interest in any Defendant, such as Stephens, Inc., D.A. Davidson & Co., Goldman Sachs, BMO Capital Markets, JP Morgan, Merrill Lynch, Bank of America, Deutsche Bank, or similar companies, including, but not limited to, the Goldman Sachs Global Staples Forum, Bank of America Merrill Lynch Global Agriculture Conference, BMO Capital Markets Annual Ag & Protein Conference, BMO Capital Markets Conference, BMO Farm to Market Conference, and JP Morgan Basic Materials Conference.

17. "Management" shall be construed broadly and means without limitation, Employees or other Persons with executive, management, supervisory or policy-setting responsibilities, both individually and collectively, and, depending upon context, includes their administrative assistants, secretaries, or other support staff.

18. "Meeting" means, without limitation, any assembly, convocation, encounter, communication, or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video, or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

19.    "Named Plaintiffs" means those individuals or entities listed as plaintiffs in the Complaint and any entities subsequently added as named plaintiffs in this matter.

20.    "Person" means, without limitation, any individual, corporation, partnership, or any variation thereof (*e.g.*, limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

21.    "Policy" or "Procedure" means any rule, practice or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

22.    "Relating to," "referring to," "regarding," "with respect to," and "concerning" mean, without limitation, the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly or indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

23.    "Representative" shall mean any and all agents, employees, servants, independent contractors, consultants, officers, directors, associates, or other persons acting or purporting to act on Your behalf or on behalf of the person in question.

24.    "Sales Personnel" shall be construed broadly and means, without limitation, any Employees or other Persons that had responsibility, directly or indirectly, relating to sales to customers of Beef sold in the United States (including any role or responsibility for selling, determining or establishing pricing, effectuating, or establishing terms and conditions of sales or purchases).

25.    "Structured Data" or "Structured Database" refers to any data that resides in a fixed field within a record or file, such as data stored in Oracle, SQL, or files that are in Columns/Rows or a fixed field with a predefined format.

26.    "Studies" or "analyses" include all reports, memoranda, statistical compilations, reviews, audits, and other types of written, printed, or electronic submissions of information.

27.    "Trade Association" means any group, committee, subcommittee, or association, formal or informal, relating to the market for Beef including, but not limited to, the National Cattlemen's Beef Association, the U.S. Meat Export Federation, the Global and U.S. Roundtables for Sustainable Beef, and the North American Meat Institute.

28.    "United States" means each of the 50 states, the District of Columbia, and the commonwealths, territories, and possessions of the United States.

29.    "Unstructured Data" is data that does not conform to a specific, pre-defined data model and may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but not are limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

30.    "You," "Your" or "Your Company" mean the responding Defendant, including its predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity that the responding Defendant manages or controls, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives or any persons acting or purporting to act on their behalf.

**INSTRUCTION**

Unless otherwise ordered by the Court or agreed to by the parties, consistent with the Order Regarding Production of Electronically Stored Information and Paper Documents (ECF No. 93), the presumptive date ranges for the Requests for Production are: (a) for Documents and Unstructured Data, January 1, 2012 to June 30, 2020, and (b) for Structured Data, January 1, 2009 to June 30, 2020.

# REQUESTS FOR PRODUCTION

**Request No. 1:**     All discovery and document requests received from parties, non-parties, or government agencies, and documents and responses provided to parties or non-parties, in actions related to this claim, including *In re Cattle Antitrust Litig.*, No. 19-cv-01222 (D. Minn.), *Peterson v. JBS USA Food Co., et al.*, Case No. 19-cv-1129 (D. Minn.), and *Erbert & Gerbert's, Inc. v. JBS USA Food Co., et al.*, Case No. 20-cv-1414 (D. Minn.), or any subsequently-filed actions coordinated with any of those actions.

**Request No. 2:**     All Documents referenced or relied upon in responding to any Interrogatory served by any party in this action, *In re Cattle Antitrust Litigation* (Case No. 19-cv-1222-JRT-HB), *Peterson, et al. v. JBS USA Food Co., et al.* (Case No. 19-cv-1129-JRT-HB), or *Erbert & Gerbert's Inc. v. JBS USA Food Co., et al.* (Case No. 20-cv-1414-JRT-HB), or any subsequently-filed actions coordinated with any of those actions.

**Request No. 3:**     All Documents reflecting Communications between You and any other Defendant that was not, at the time of the Document or Communication, an entity with which You were affiliated as a parent, subsidiary, or other corporate affiliate.

**Request No. 4:**     For each Document Custodian, all:

a.     electronic and hard copy diaries, calendars, appointment books, notebooks, to-do lists, Day Timers, day planners, or appointment notes;

11

b.      contact information maintained in Microsoft Outlook, similar programs, Rolodex cards, or any other format, for any Person who is or was: (i) an owner, employee, consultant, officer, board member, Representative, or agent of a Defendant; (ii) an Industry Analyst; (iii) an employee of a Trade Association; or (iv) an employee of any entity that falls within the definition of Industry Meeting;

c.      trip and travel logs, records, expenses, and other supporting Documents;

d.      expense and entertainment reports, including supporting Documents;

e.      bills, statements, records, and supporting Documents concerning local, long distance, and cellular telephone calls by such employees, including calls made using telephones not paid for by You (such as home office, fax, and personal telephone numbers, personal cellphones, and temporary pay-as-you go cellphones) if such telephones were used for business purposes;

f.      Documents relating to membership in any Trade Association or industry group or attendance at any Industry Meeting or Investor Conference;

g.      a copy of the Person's most recently created resume or curriculum vitae (CV);

h.      personnel file, including any discipline or performance evaluations, and any terms of employment (such as confidentiality or non-compete agreements);

i.      copies of any transcripts or recordings of prior testimony relating to Competitive Conditions in the market for Beef, such as testimony at a deposition, trial, or public hearing;

j.      Documents sufficient to show the Document Custodian's complete contact information, including all phone numbers, social media usernames or "handles," and email addresses used by such persons for any business purposes, even if only sparingly; and

      k.     Any severance agreements in connection with the Document Custodian ceasing employment or changing employment status with You (without time limitation).

**Request No. 5:**    All Documents relating to any Trade Associations, Industry Meetings, Investor Conferences, including membership lists, announcements, dates and locations for meetings, presentations (including speaker notes, where applicable), agendas, minutes, notes, attendance lists, expense reports, handouts, reports, statistical bulletins, and correspondence.

**Request No. 6:**    All Documents that compare or contrast Beef sold by You in the United States with Beef sold by any other Defendant (including product characteristics, product forms, packaging, specifications, quality, prices, availability, delivery schedules, etc.), any product crosswalks (listings identifying products or characteristics of products of different Defendants that are deemed to be substitutable for one another), or any other comparison showing how Beef sold by You compare to other Defendants.

**Request No. 7:**    Documents sufficient to show industrywide standards of products and definitions or descriptions of standards for Beef.

**Request No. 8:**    All Documents relating to the forecasted, projected, estimated, or actual effects of the relationship of changes of Beef price, supply, and/or demand, including any estimates of the elasticity of supply or demand, or price sensitivity of Beef.

**Request No. 9:**  Documents sufficient to identify Your cost accounting Policies and Procedures for Beef and accounting Policies and Procedures for intra-company transfer pricing and transactions between Defendants for Beef.

**Request No. 10:**  Documents sufficient to describe in detail Your Policies and Procedures concerning the imposition of surcharges and customer rebates, credits, discounts, and any other special price arrangements for direct purchasers of Beef.

**Request No. 11:**  All Documents or Communications with or about cattle ranchers or feed lots relating to Beef Supply Factors.

**Request No. 12:**  All Communications to and from and all Documents relating to the United States Department of Agriculture and its subdivisions or any data analytics and market research company regarding Beef Supply Factors, Beef supplies, Beef exports, or Beef pricing.

**Request No. 13:**  To the extent not produced in response to other Requests, all Documents and Communications regarding the Beef market collected, disseminated, purchased, or received from, reported to, and/or published by the United States Department of Agriculture and its subdivisions or any data analytics and market research company.

**Request No. 14:**  All Documents relating to the Beef supplies or Beef pricing, including the information collection, verification, auditing, and reporting methodologies or Procedures, inaccuracies, errors, or vulnerabilities to

14

manipulation; any agreement with other Defendants or co-conspirators concerning reporting of information; and any responses or Communications relating to any investigation (whether formal or informal) concerning the accuracy of information reported to the United States Department of Agriculture or United States Department of Justice's investigation.

**Request No. 15:**   All Documents and Communications relating to any memoranda, studies, reports, analyses, or presentations analyzing Competitive Conditions in the Beef industry prepared by a consulting firm.

**Request No. 16:**   Documents sufficient to identify any tentative, proposed or consummated sale, acquisition, merger, joint venture, divestiture, transfer of assets, spin-off, or any other form of change of ownership or control or business combination concerning any Beef-related business, production facilities, product lines, or other assets (including both businesses or assets owned or controlled by You and those owned or controlled by other Persons), and any minutes, notes, reports, studies, analysis, presentations, expert or market participant comments, analysis or other information submitted to or received from any governmental agency.

**Request No. 17:**   All Documents and Communications relating to the immediately prior Request that reflect the disclosure of any non-public information to another Defendant that was not, at the time of the Document or Communication, affiliated

with You concerning Beef Supply Factors, Beef pricing, or any future Beef supply plans, including documents made available to You or by You through an electronic "data room" associated with a proposed transaction.

**Request No. 18:**   All Documents that directly or indirectly relate, in whole or in part, alone or when viewed with other Documents, to any combination, conspiracy, agreement or understanding, explicit, implied or tacit, to fix prices, reduce output, limit production, limit capacity, limit supplies, limit inventories, or allocate customers, product lines or territories for Beef sold in the United States.

**Request No. 19:**   All Documents relating to compliance Policies whether implemented, adopted, used or considered concerning federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, and any similar laws or regulations, or contacts and/or Communications with Your competitors (including current and former versions of compliance Policies and Procedures, presentations, seminars, programs, memos, Corporate Communications, statements signed by Your employees with responsibility for Beef that acknowledge receipt of or compliance with such Policies arising from or relating to any prior legal proceedings), and all Documents relating to any inquiries or investigations concerning compliance with such Policies including those listed in the prior Request.

16

**Request No. 20:**   All Documents relating to any joint defense, contribution, indemnity, or judgment sharing agreement relating to any investigation, civil or criminal litigation involving the production, sale, resale, or marketing of Beef.

**Request No. 21:**   All Documents relating to the Named Plaintiffs in this action.

**Request No. 22:**   All Documents relating to any changes made to the conditions, terms of sale, contracts, rebates, discounts, and/or special pricing for the sale of Beef to any Named Plaintiff.

**Request No. 23:**   Any privilege or other logs of Documents relating to competition in the Beef industry that were withheld from productions pursuant to any civil investigative demand, grand jury subpoena, or other investigative request from the United States Department of Justice, the United States Federal Trade Commission, the United States Department of Agriculture, the United States Securities & Exchange Commission, states' attorneys general, or other government agencies or regulators (including employees of the Federal Bureau of Investigation and United States Department of Commerce). The request is also ongoing, and not limited to documents provided prior to the time of service of this request.

**Request No. 24:**   Documents relating to any possible or alleged violations of federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, and any similar laws, rules or regulations

by You, any other Defendant or any other Beef-related business or person (including

any current or former officers, directors, Employees, or other persons) including:

    a.    any inquiry, investigation, administrative, criminal, or civil litigation, or similar actions (regardless of characterizations such as non-adjudicative, cooperating, preliminary, informal, formal, incomplete, open, closed or final) by any government entity, legislative body, representative, or instrumentality thereof (*e.g.*, the United States Department of Justice, the United States Federal Bureau of Investigation, the United States Federal Trade Commission, the International Trade Commission, any state law enforcement agency, any grand jury, any committee of the United States Congress, any agency of a state or other political subdivision, and any domestic or international government body, including all Documents received from or provided to such governmental entities or used during or regarding discussions or negotiations with them);

    b.    any internal inquiry or investigation (regardless of characterizations such as non- adjudicative, cooperating, preliminary, informal, formal, incomplete, open, closed, or final) and further including any violation of internal antitrust or competition law Policies or practices; and

    c.    any private actions or civil litigation (including arbitrations, mediations, or negotiations and further including any violation of internal antitrust or competition law Policies or practices) in which You have been a party, witness, participant, or subject.

**Request No. 25:**   Documents sufficient to show the terms and conditions of any

preliminary or permanent injunction, consent decree, plea agreement, sentencing

agreement, settlement agreement or stipulation of settlement in a class action or

private action, judgment or similar orders or agreements relating to alleged

violations of federal, state, or international antitrust laws, competition laws, anti-

monopoly laws, anti-cartel laws, unfair competition laws, and any similar laws, rules or regulations entered against You or any other Defendant.

**Request No. 26:**   All Documents relating to complaints received from any Beef customer regarding prices, pricing, or terms or conditions of sale or the refusal or failure to supply Beef and any responses thereto, and all Documents reflecting any Policy of Your Company concerning the handling of such complaints.

**Request No. 27:**   All Documents that support or disprove any affirmative defense alleged by any Defendant in this action, including the statute of limitations, doctrines of estoppel and laches, or release of any claims.

**Request No. 28:**   All Documents necessary to identify and understand the operation and output of Your information systems, software, Structured Databases and ESI, storage, backup and archiving systems, Communications systems, and devices used in connection with collecting the information requested herein. (including, but not limited to, data maps, explanations of information maintained, and document retention Policies); user manuals; Help features or documentation; password, encryption, and other security protocols; diskette, CD, DVD, and other removable media labeling standards; email storage conventions (*e.g.*, limitations on mailbox sizes/storage locations, schedule and logs for storage, software and hardware upgrades (including patches and who and what organization conducted such upgrades), and Backup tape rotation).

19

**Request No. 29:**   All Documents related to the claims and allegations in the Complaint.

**Request No. 30:**   Documents sufficient to show Your production processes, including each class, type, cut, grade, or category of Beef that You manufactured, marketed, sold, or distributed in the United States (including raw material inputs).

**Request No. 31:**   Documents sufficient to identify all of Your facilities and plants relating to the production, processing, distribution, marketing, pricing or sale of Beef in the United States.

**Request No. 32:**   Documents concerning the identity of any actual or potential entrant(s) into the Beef processing and packing market and any barriers, obstacles or difficulties facing the actual or potential entrant(s).

**Request No. 33:**   Documents sufficient to identify the Management and Sales Personnel having non-clerical responsibilities or duties with respect to any of the following:

      a.    the production or processing of Beef;

      b.    the marketing or promotion of Beef;

      c.    the pricing of Beef;

      d.    the sale or distribution of Beef;

      e.    antitrust compliance;

    f.      the maintenance of any electronic database(s), including archives of emails or other electronic documents relating to Beef.

**Request No. 34:** Documents sufficient to show any insurance Policies, indemnification agreements, judgment sharing agreements or hold harmless agreements that may provide coverage to You or any other defendant named in this action for any of the claims or causes of action asserted in this action, or that may provide reimbursement for payments made or costs incurred in defense of this action.

**Request No. 35:** All contracts and any summaries of the terms (including duration, price protection, terms for price modification, surcharges, discounts, or rebates) for the sale of Beef in the United States to Your customers.

**Request No. 36:** All Structured Data showing the individual transactions Your Company made to procure cattle domestically and through imports into the United States as well as the shipments or other movements of cattle into Your possession. For each transaction, this includes, but is not limited to, Structured Data identifying the cattle producer/supplier; the geographic location of the feedlot; indicator for whether supplied via a captive/owned entity; type of procurement transaction (*e.g.*, whether cash or spot, negotiated grid, negotiated formula, forward contract, other formula marketing agreement); date of purchase; date of delivery; payment and delivery terms; the specific pricing terms and determinants of pricing (*e.g.*, formula,

grid, adjustments); supply commitments; the plant used for slaughter and production and its location; key characteristics and physical dimensions of the specific livestock; the total sale amount; and the unit volume/number of head of livestock.

**Request No. 37:**  All Structured Data compiled for internal analyses and/or reporting that tracks cattle procurement on a regular basis (*e.g.*, daily, weekly, monthly, quarterly, or annually). This would include, but is not limited to, Structured Data that are summarized by supplier, by slaughter facility, by plant, by customer, by region, by specific characteristics of the livestock, or other combinations of these dimensions.

**Request No. 38:**  All Structured Data tracking and/or estimating the cattle procurement activities of other Defendants and competitors, including, but not limited to, the type of transaction, name and location of producer/supplier, slaughter facility and location, contract terms, pricing, procured cattle volumes, as well as weight and other characteristics of the livestock.

**Request No. 39:**  All Structured Data and studies tracking actual and/or projected industry-level and regional-level a) prices, b) industry production (supply), and c) units of quantity consumed (demand) for cattle and any related livestock tracked in parallel.

**Request No. 40:**  All Structured Data showing, for each of Your plants and for Your United States operations as a whole, granular (*e.g.*, daily or weekly) as well as

quarterly, slaughter and Beef production volumes, capacity, capacity utilization, inventories and other tracked production metrics, as well as changes in these metrics over time. These metrics include, but are not limited to, head per day, hours per shift, shifts per day, capacity per day and week, gross chain speed, and number of days operating in a week.

**Request No. 41:**   All Structured Data showing, for each of Your plants and for Your United States operations as a whole, granular costs of production broken down by tracked line item as well as any other tracked dimensions (*e.g.*, product).

**Request No. 42:**   All Structured Data compiled for internal analyses and/or reporting that tracks Beef production and packing activities of Your Company and competitors at the company and/or plant levels on a regular basis (*e.g.*, daily, weekly, monthly, quarterly, or annually), including, but not limited to, slaughter volumes, production volumes, capacity and utilization, costs of production, and the expansion, retrenchment, or curtailment of any aspects of the production chain.

**Request No. 43:**   All Structured Data tracking and/or estimating the retail/end-consumer selling prices for each of the wholesale transactions identified in the specification above.

**Request No. 44:**   All Structured Data compiled for internal analyses and/or reporting that tracks Beef sales on a regular basis (*e.g.*, daily, weekly, monthly, quarterly, or annually).

**Request No. 45:**   All Structured Data tracking and summarizing pricing, supply commitments, and other terms of contracts with any customers as well as any changes to these terms made over time.

**Request No. 46:**   All Documents relating to any decision to change the pricing terms for Your customers' contracts for Beef, including any analyses regarding changes from fixed price to adjustable price provisions.

**Request No. 47:**   All Structured Data tracking and comparing the "spread" or "margin" between pricing at the cattle and Beef levels over time for Your Company's operations, for the industry as a whole, and for any competitors. This includes, but is not limited to, Structured Data showing the difference in pricing, costs, and profitability between the cattle procurement vs. wholesale level and cattle procurement vs. retail level.

**Request No. 48:**   All Structured Data tracking Your Company's imports or exports of Beef or Beef-related products to and/or from the United States.

**Request No. 49:**   All Structured Data tracking and/or estimating the wholesale and retail Beef sales activities of competitors, including, but not limited to, customer name and location, contract terms, type of packaging, product cut, grade, and other characteristics, unit volumes, and pricing.

**Request No. 50:**   All Structured Data and studies tracking actual and/or projected industry-level and regional-level a) prices, b) industry production (supply), and c)

units of quantity consumed (demand) for Beef, Beef-related products, and any related protein products tracked in parallel.

**Request No. 51:**   All profit and loss (P&L) Structured Data and summary reports used for internal management purposes detailing the components of sales revenues, costs of goods sold, production costs, selling expenses, and margins (in dollars and as %). This Structured Data should be provided at the lowest levels of granularity for each dimension for which it is tracked (*e.g.*, by plant, by product, by business segment, and by company).

**Request No. 52:**   All Structured Data and reporting Your Company's specific commodity contract trading activities and positions held over time involving the Chicago Mercantile Exchange (CME) and other commodities trading exchanges or platforms.

**Request No. 53:**   All Structured Data, internal studies, and analyses submitted to a government agency (*e.g.*, United States Department of Justice, United States Department of Agriculture) in response to investigative requests issued to Your Company, in connection with an investigation or potential investigation, a proposed transaction (*e.g.*, merger) involving Your Company, or in accordance with any reporting statute (*e.g.*, Livestock Mandatory Reporting (LMR) Act).

Dated: October 15, 2021

*/s/ Adam J. Zapala*
Adam J. Zapala
Elizabeth T. Castillo
Alexander E. Barnett
James. G.B. Dallal
**COTCHETT, PITRE &
MCCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com
ecastillo@cpmlegal.com
abarnett@cpmlegal.com
jdallal@cpmlegal.com

Megan E. Jones
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
mjones@hausfeld.com

Timothy S. Kearns
**Hausfeld LLP**
888 16th St. NW, Suite 300
Washington, DC 20006
Tel: (202)540-7200
tkearns@hausfeld.com

Jason S. Hartley
Dylan McFarland
**HARTLEY LLP**
101 W. Broadway, Suite 820
San Diego, CA 92101
Tel: (619) 400-5822
hartley@hartleyllp.com
mcfarland@hartleyllp.com

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#0388166)
Joshua J. Rissman (#0391500)
Brittany Resch (#397656)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Dennis J. Stewart
**GUSTAFSON GLUEK PLLC**
600 B Street
17th Floor
San Diego, CA 92101
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dstewart@gustafsongluek.com

*Co-Lead Counsel for Direct Purchaser Plaintiff Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2021, I served all parties true and correct copies of the DIRECT PURCHASER PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS by email to the addresses listed below:

**Counsel for Defendants Cargill, Incorporated and Cargill Meat Solutions Corporation:**
mryan@mayerbrown.com
WStallings@mayerbrown.com
khibbard@greeneespel.com
HHorrell@greeneespel.com
clevy@greeneespel.com

**Counsel for Defendants JBS USA Food Company Holdings and JBS Packerland, Inc. in the Peterson, DPP and Erbert & Gerbert's cases:**
qe-jbsbeefantitrust@quinnemanuel.com
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com
amcclintic@spencerfane.com

**Counsel for Defendants JBS USA Food Company, JBS Packerland, Inc., and Swift Beef Company in the Cattle case:**
whargens@mcgrathnorth.com
pbrookhouser@mcgrathnorth.com
cmorris@bassford.com

**Counsel for Defendant National Beef Packing Company, LLC:**
jmcevoy@jonesday.com
prender@jonesday.com
bellison@jonesday.com
ehasdoo@jonesday.com

**Counsel for Defendants Tyson Foods, Inc. and Tyson Fresh Meats, Inc.:**
TysonBeefAntitrustTeam@perkinscoie.com

27

dgraham@dykema.com

**Counsel for Plaintiffs and the Proposed Consumer Indirect Purchaser Classes in the Peterson Action:**
wjbruckner@locklaw.com
bdclark@locklaw.com
aswagner@locklaw.com
kjpozan@locklaw.com
emsipe@locklaw.com
steve@hbsslaw.com
shanas@hbsslaw.com
riop@hbsslaw.com
breannav@hbsslaw.com
brianm@hbsslaw.com

**Interim Co-Lead Counsel for the Cattle Plaintiffs:**
alawrence@scott-scott.com
msrodoski@scott-scott.com
pmcgahan@scott-scott.com
cburke@scott-scott.com
jsprengel@caffertyclobes.com
emeriwether@caffertyclobes.com
afata@caffertyclobes.com
TUndlin@RobinsKaplan.com
sslaughter@robinskaplan.com
gkozen@robinskaplan.com
ebarstad@robinskaplan.com
cattlecoleads@scott-scott.com

**Counsel for Erbert & Gerbert's, Inc. and the Proposed Classes:**
JonC@cuneolaw.com
bfinley@cuneolaw.com
sraiter@larsonking.com
DMcMullan@BarrettLawGroup.com
SAldridge@barrettlawgroup.com
kbriley@barrettlawgroup.com

**Counsel for Plaintiffs Winn-Dixie Stores, Inc., and Bi-Lo Holding, LLC:**
patrick.ahern@ahernandassociatespc.com
theo.bell@ahernandassociatespc.com
patrick@ttlolaw.com

*/s/ Adam J. Zapala*
Adam J. Zapala
